[Civ. No. 22938. First Dist., Div. Three. Aug. 2, 1966.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION,
Plaintiff and Respondent, v. WILLITS UNIFIED
SCHOOL DISTRICT et al., Defendants and Appellants.

778

Thomas F. Cleland, District Attorney, and David L. Luce, Deputy District Attorney, for Defendants and Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), James W. Briggs, Raymond W. Schneider, Deputy County Counsel, Adrian Kuyper, County Counsel (Orange), and Arthur C. Wahlstedt, Jr., Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Richard H. Perry for Plaintiff and Respondent.

DEVINE, J.—Defendant school district and several public officers appeal from an injunction and judgment granting writ of mandate which prohibit the school district from contracting for janitorial services, which order reinstatement of two formerly employed school janitors, and which award back pay to them.

### Facts and Law on Plaintiff's Standing to Sue

Sections 3500-3509 of the Government Code recognize the right of public employees to join and to be represented by employee organizations. An employee organization must have as one of its primary purposes the representation of employees in their relations with the public agency. (Gov. Code, § 3501.) The suggestion by the school district that the California School Employees Association (hereafter referred to as the Association) is not an organization which meets the terms

of section 3501 is without merit. Its articles of incorporation and bylaws do not, to be sure, expressly mention representation of the employees. They do state that the Association's objects are to "raise the standards" and to "promote generally the welfare" of members. These were drawn before sections 3500-3509 were enacted. That the articles were not subsequently amended to provide specifically for representation of employees is doubtless because amendment was deemed unnecessary.

The code sections do not expressly authorize employee organizations to sue on behalf of their members. But in *Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158], it is held that an organization which qualifies under sections 3500-3509 does have standing to sue in its own name to enforce the employment rights of its members.

The school district protests that a representative suit is improper because there is no showing that there is a "question of common interest" within the meaning of section 382 of the Code of Civil Procedure, the one which provides for representative suits. The discussion below on the substantive issues of the case demonstrates that the question is not only of common interest (as might be the case where relatively few parties in private litigation would have a common problem), but is of public interest, for the issues relate to interpretation of important statutes. If confirmation of this concept were needed, it is found in the brief of amici curiae Los Angeles and Orange county counsel who support the district's position on the main issues, but say that the question whether certain services may be contracted for is "of vital interest to all school districts in the State of California."

Equally lacking in substance is the district's contention that individual actions should have been brought because the evidence relating to the two individuals was different. It was different as to amounts of salary and perhaps other details, but not as to substantial issues, particularly when interpretation of the same statutes was essential to both cases. The case cited by the district, *Noroian* v. *Bennett,* 179 Cal. 806 [179 P. 158], a joint action by several different plaintiffs suing for fraud to cancel promissory notes made by each plaintiff separately and at different times and under different conditions to the same defendant, is essentially unlike the case before us.

## Substantive Issues; General Facts; The Judgment

The substantive issues are: (1) May a school board contract for janitorial services or must it employ classified employees for this work? (2) Are the employees in this case "permanent" or "annual"?

The general facts are these: two women who had been employed by the school district for janitorial work were dismissed from their positions (one was given a lesser position) because the district had let a contract to a private firm to do the work. There was no other reason for their dismissal. It is undisputed that the school district believed, in good faith, that the work would be more economically done under the contract. Whether it actually was more economical is not clear. The contract was discontinued after the court overruled the school district's demurrer. The original employees were rehired.

The Association sought and obtained judgment that injunction issue against the school district and its officers from contracting for services performed by classified employees (as defined later), that the women be reinstated in their positions with restoration of leaves, retirement benefits and other benefits appertaining to the classified service, and be paid back salaries with interest.

█ Because there is no dispute about the facts and the case is to be decided entirely on interpretation of statutes, we must make our independent determination. (*Gibbons & Reed Co. v. Department of Motor Vehicles,* 220 Cal.App.2d 277 [33 Cal.Rptr. 688, 927].)

## Power of School District to Contract for Janitorial Services

█ School district boards have power to contract only as provided by statute. (*People* v. *Stanley,* 193 Cal. 428, 430-431 [225 P. 1].) █ The school district contends that it derives power to contract for janitorial services from two statutes: Education Code sections 15801 and 15955. The former provides that: "The governing board of any school district shall manage and control school property within its district." This is a very general statute. It says nothing about contracts or employment. The other statutes to be discussed relate more specifically to contracts and employment. We find nothing in section 15801 which grants contracting power. █ Section 15955, however, is the one on which the school district chiefly relies. It reads: "Continuing contracts for work to be done, services to be performed, or for apparatus or equipment to be

furnished, sold, built, leased, installed, or repaired for the district, or for materials or supplies to be furnished, sold or leased to the district may be made with an accepted vendor or lessor as follows: for work or services, or for apparatus or equipment, not to exceed five years; for materials or supplies, not to exceed three years." (Stats. 1961, ch. 2120, p. 4380.) The school district argues that there is no limitation in the statute on its power to contract for services. It is the Association's position that section 15955 gives power to school boards to contract for those services only which are not routinely performed as an immediate adjunct to the day-to-day operation of the schools and which have not historically been performed by employees of the school district. The Association contends that limitations are implied from the terms of the section and from certain statutes besides the one on which it places main reliance, namely, Education Code section 13581.

We address ourselves to the analysis of section 15955. Although it does not contain any specific limitation on the kinds of services which may be "contracted out," and although respondent's case must be established principally by the positive side of its cause, nevertheless there are indicia that section 15955 does not necessarily (and in such manner as to preclude affirmative contrary showing from other sources) embrace *all* possible services. It does not contain a limitation against contracting for teaching, assuming certified teachers could be supplied. It is unlikely, of course, that such a contract would be attempted; the point is merely that the broad terms of section 15955 do not forbid it. Then, the fact that a number of services are specifically made the proper subject of contract (transportation [Ed. Code, § 16801 et seq.]; employment of attorneys [Ed. Code, § 1016]; repair of football equipment [Ed. Code, § 15814]; financial advice [Gov. Code, § 53060]; repair of property [Ed. Code, § 15951]), although probably not bringing into play the *inclusio unius* rule, does suggest doubt that section 15955 is all-embracing; in particular, as against the provisions of section 13581, later to be analyzed. For all of the services which may be "contracted out" section 15955 provides effective maximum durations.

At this point we observe that the brief of amici curiae, the county counsel of Los Angeles and Orange Counties, states that in recent years there has been significant increase in the number of services necessary to maintain the schools, such as servicing air-conditioning equipment, swimming pool main-

tenance, landscape gardening, typewriter service, and the maintenance of highly specialized equipment such as Xerox machines. It is understandable that many of the highly technical services mentioned are necessarily the subject of contract, as amici curiae say they are; they do not say, of course, that ordinary janitorial services are necessarily performable under contract, but that they may be more economically done by contract. Now, the Association agrees that nearly all of the services mentioned in the brief may be contracted for, because they are not part of the routine tasks performable by employees of the schools. The Association would make a distinction in the maintenance of swimming pools between the tasks of day-to-day sweeping, etc. around the pool and the specialized work which service companies do; and as to gardening, between the routine chores of lawn-cutting, etc. and periodic, special work such as tree spraying. We are not disposed to go into these matters one by one. We do point out that about many of the contracted services which amici curiae are concerned to retain, there is no dispute.

We turn to section 13581 of the Education Code. At all times relevant, the section read as follows: "The governing board of any school district shall employ persons for positions not requiring certification qualifications.* The governing board shall, except where Article 5 (commencing at Section 13701) of this chapter or Section 13756 applies, classify all such employees and positions. The employees and positions shall be known as the classified service. Substitute and short term employees, employed and paid for less than 75 percent of a school year, shall not be a part of the classified service. Part-time playground positions, full-time day students employed part time, apprentices and professional experts employed on a temporary basis for a specific project, regardless of length of employment, shall not be a part of the classified service." (There was an amendment in 1965, but it has no significance to this case [Stats. 1965, ch. 1663, p. 3774].)

The Association contends that the word "shall" in the section is mandatory, as provided in Education Code section 36 among general definitions. All persons, therefore, says the Association, who perform the regular functions in connection with the operation of the schools, other than the academic or certificated personnel, must be *employed* and classified. The statute, argues the Association, is not merely permissive, allow-

---

*Certificated employees are the academic personnel.

ing the employment of persons, but also allowing, if the board chooses, a contractual arrangement.

We conclude that the Association is correct as to the dismissed janitorial employees. The statute is cast in mandatory terms. It resembles the section in which boards are required to engage certificated personnel for teaching, namely, Education Code section 13252. The requirement of classification contained in section 13581, it seems clear, is intended to impose an obligation which cannot be avoided by the use of contracts. Moreover, the section goes on to spell out exemptions from classification (substitute and short-term and part-time and student employees, apprentices, and professional experts). The listing of exemptions implies that others are included in the mandatory terms of the section.

It is not necessary for us to designate which employees other than janitors may be covered by section 13581. Affected directly by the decision in this case are janitors only. For many years there has been a special designation of janitors as persons to be employed by school boards. (Stats. 1943, ch. 71, p. 581; Ed. Code, § 14001; Sch. Code, § 5.770.) Section 14001, the immediate predecessor to section 13581, read: "The governing board of any school district shall employ janitors and other employees of the school." No doubt the janitor, the traditional keeper of the keys to the doors (from which role his name derives) and the protector of cleanliness, has always been deemed an essential and intimate part of the operation of the schools. Indeed, section 816 of the Education Code requires the superintendent of schools to employ a janitor if the board fails to do so. The janitor (or janitress) comes into fairly close contact with pupils and teachers.

For the protection of pupils the Legislature has enacted statutes forbidding employment in the schools of persons guilty of sex offenses (Ed. Code, § 13586) and sex psychopaths (Ed. Code, § 13587). An elaborate system of fingerprint cards to be filed with the Bureau of Criminal Identification and Investigation of the State Department of Justice has been set up (Ed. Code, § 13588). These provisions, of course, apply only to employees of the school districts and not to employees of contractors.

Not only, however, are there statutory protections for the pupils, but there are also statutory regulations in favor of school district employees which would not be applicable to employees of a contractor, for example, Education Code sec-

tions 13651.1 (leaves of absence and accumulation thereof), 13651.3 (leave at time of childbirth), 13651.4 (leave for funeral of relative). These are but a few examples. The entire statutory scheme of protection of employees applies to those who are classified under section 13581.

At this point, it is to be noted that in 1959, when classified service was as defined by section 13581 and other statutes, the word "janitors" was taken out of section 13581. In its place there is the more general designation "persons for positions not requiring certification qualifications." Our interpretation of this is not that janitors are to be treated less favorably in respect of classification than other employees, but simply that the proper description would include them without specific designation. We can see no reason why janitors, so long regarded by the statutes as an integral part of the operation of schools, would be demoted in position. Indeed, the trend of the statutes, and particularly the first spelling out of the term "classified service" in section 13581, indicates that what was intended was a strengthening of the position of employees, not a weakening of one rather favored class. Moreover, Education Code section 816, commanding the superintendent of schools to employ janitors if the boards fail to do so, remains in effect.

Finally, we refer to the case of *Stockburger* v. *Riley*, 21 Cal.App.2d 165 [68 P.2d 741], in which a contract made by the state to have windows washed by a contractor, was held invalid. It is true that the case had to do with employees under a higher system, the merit system, who were deprived of their jobs by the contract. The classified employees do not belong to the merit system. The contract in the *Stockburger* case was invalidated partly under that part of the California Constitution which has to do with State Civil Service (the merit system, art. XXIV), but the decision was partly based upon the inclusive provisions of the Civil Service Act (p. 170).

It is our opinion that section 13581 is of ample breadth to make mandatory the employment of janitors to do the regular work of that occupation.

### Whether the Employees Were Permanent

At the time the contract was let, Education Code section 13583 (Stats. 1959, ch. 1901, p. 4472) provided that the "governing board shall provide an annual employment contract for employees a part of the classified service which shall extend to the close of the fiscal year; except that any govern-

ing board may make the contract renewable from year to year." But it also provided for permanent employees who should be subject to dismissal for cause only, as determined by the governing board. This was purely a permissive thing. The section says that "the governing board may prescribe written rules and regulations, which shall be printed and made available to employees in the classified service, the public, and those concerned with the administration of this section, whereby such employees are designated as permanent employees of the district." The governing board of the Willits School District had not printed such rules and regulations as to make employees permanent. The Association, however, contends that the particular employees who were affected were permanent employees even though the manner of gaining permanency of employment had not been complied with. At this point, we note that in the making of public contracts, the mode is the measure of the power. (*Miller* v. *McKinnon,* 20 Cal.2d 83, 91-92 [124 P.2d 34, 140 A.L.R. 570].) The contracts themselves which the two employees signed every year are unambiguous. They specify one year's employment. The school district's Administrative Code defines contract as an "agreement between the school district and a classified service employee for employment extending only to the close of the fiscal year."

It remains for us to discuss the Association's arguments made against the literal application of the statute, against the case law as stated in *Miller* v. *McKinnon,* and against the clear contracts.

It was the practice of the school district to renew contracts, and the district's Administrative Code contains regulations which are designed to encourage the employees to remain, such as provisions for accumulated sick leave and step increases in salary depending on length of service. Some of the rights, however, would belong to the employees by reason of the Education Code of the state, the same code which distinguished between annual and permanent employment. The court found that the annual execution of the contracts was merely *pro forma.* But that which is required by statute to be done in order to establish contractual rights between an individual and a public body cannot be dismissed as *pro forma.*

It is argued by the Association that the term "regular employee" is the equivalent, under all the circumstances, of permanent employee. But the Administrative Code defines a regular employee as one employed for the normal work week

of 40 hours and at least 75 percent of the school year. Thus, an annual employee would be a regular employee, as distinguished from a part-time employee, by working the requisite amount of time within the year.

The argument that the contracts were contracts of adhesion within the meaning of *Neal* v. *State Farm Ins. Cos.,* 188 Cal. App.2d 690 [10 Cal.Rptr. 781], is ineffective. Consideration of contracts of adhesion is relevant only where the contract itself is ambiguous. These contracts are not. Also, it is argued that because the contracts were made renewable by the Administrative Code ''unless the employee shall give notice of non-consent within 30 days from the notice of contract renewal,'' renewal for the next year was automatic. But this provision obviously was intended simply to protect the employee in case action to renew were omitted, possibly because of inadvertence. The district was not bound to renew, at least where it gave notice of nonrenewal prior to the date of implied acceptance of renewal by the employee.

 It is contended that it is inconsistent to give employees statutory rights which are important only if employment be permanent, and at the same time to provide for annual contracts. But this is a matter belonging to the Legislature. Indeed, the Legislature in 1965 abolished the provision for annual contracts by amendment to section 13583 (Stats. 1965, ch. 1663, p. 3774). But this cannot be given retrospective operation to change the nature of contracts made before the amendment. Disappointment of the employees is understandable but it cannot justify remaking of contracts. (See *Raney* v. *Board of Trustees,* 239 Cal.App.2d 256, 260 [48 Cal.Rptr. 555].) We conclude that the award of back salary to one employee and damages for diminished income to the other cannot be sustained.

### The Injunction

 The injunction forbids the school district and its officers to contract for services performable by classified employees. Appellants protest that this is too broad. We agree. There was no proof that the district was about to contract for other services, whether clerical, secretarial, or otherwise.

Amici curiae point to a number of services performed for school districts under contracts which could be invalidated by a broad decision here. These issues are neither presented nor fully argued here, but they do point up serious problems which may be raised if our determination is not strictly

limited. The Education Code, in delineating the powers of school boards and the rights of employees, is bewilderingly varied. As to some aspects of employment relations, the code sets out broad rules. In other aspects it is painstakingly detailed, and not without possible contradictions. We have pointed to specific code provisions concerning janitors. The solicitude of the Legislature for these specific employees impels us to hold that the functions of janitors must be performed by employees. We do not determine the applicability of this rule to other noncertificated employees as to whom comparably detailed statutory provisions have not been shown to us.

The Legislature has been active in the field of the matter of classified employees of the school districts. It seems proper that judicial decisions in this area should go no farther than is necessary. The injunction is modified to prohibit the school district from contracting with nonclassified employees for the performance of janitorial services, and as so modified is affirmed. The judgment for mandate to compel payment of salary to the individual employees is reversed. Each party to bear own costs on appeal.

Draper, P. J., and Salsman, J., concurred.