[Civ. No. 46978. Second Dist., Div. Five. June 8, 1976.]

INTERNATIONAL UNION OF UNITED AUTOMOBILE, AERO-SPACE AND AGRICULTURAL
IMPLEMENT WORKERS OF
AMERICA (UAW) et al., Plaintiffs and Appellants, v.
DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT et al.,
Defendants and Respondents;
GENERAL MOTORS CORPORATION,
Real Party in Interest and Respondent.

**COUNSEL**

Levy, Koszdin & Woods and Henry R. Fenton for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendants and Respondents.

Lawler, Felix & Hall and Richard D. DeLuce for Real Party in Interest and Respondent.

**OPINION**

**STEPHENS, Acting P. J.**—This is an appeal from a judgment denying the issuance of a peremptory writ of mandamus commanding respondent California Department of Human Resources Development (the Department) to reverse decisions of the California Unemployment Insurance

Appeals Board which denied the petitioners' claims for unemployment insurance benefits.

## Facts

The 10 individual petitioners are all members of the petitioner union, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW). The individual petitioners are automobile assemblers employed by Respondent General Motors Corporation (the real party in interest), at its automobile assembly plant in South Gate, California. This plant closes each summer for a short period of time, generally from one to four weeks, in order to make tooling changes for new automobile models. Consequently, the individual petitioners, together with most of their co-employees, were temporarily laid off on July 19, 1973. Each of the individual petitioners was given a specific recall date.[1] Individuals so laid off are eligible for unemployment insurance benefits under section 1252 of the Unemployment Insurance Code.[2] However, in order to draw such benefits, they must be "able to work and available for work" within the meaning of Unemployment Insurance Code section 1253, subdivision (c). In addition, the unemployed claimants are required to conduct "a search for suitable work in accordance with specific and reasonable instructions of a public employment office." (Unemp. Ins. Code, § 1253, subd. (e).) At the beginning of the lay-off period in question, respondent Department gave the individual petitioners a "Seek Work Plan" which provided in part as follows:

"The Unemployment Insurance Code requires an individual 'to make all reasonable effort' to secure work in order to be eligible for benefits. [Unemp. Ins. Code, § 100.]

"For the reason shown on the reverse side of this form, it has been determined that your reporting to the Department as scheduled is

---

[1] One petitioner was given the recall date of August 6, 1973. Another was given the recall date of August 20, 1973. The record merely notes that another petitioner was given a "specific" recall date in August 1973. The remaining seven petitioners were given the recall date of August 13, 1973.

[2] Unemployment Insurance Code, section 1252, in pertinent part, provides: "An individual is 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him . . . ."

sufficient to meet this seek-work requirement. [3] To remain eligible however, you must be able to work and available for suitable work each week."

The individual petitioners were denied benefits by the Department for various periods of time because they left the State of California while covered by the Seek Work Plan. Each petitioner left California for personal reasons.[4]

The lower court denied the petition for a peremptory writ of mandamus, determining that the individual petitioners, by absenting themselves from California during a period of time for which benefits were claimed, made themselves unavailable for work within the meaning of section 1253, subdivision (c). The court further held that petitioner UAW, which sought an order compelling the Department to alter its disqualification requirements in future instances, failed to state a cause of action. Petitioners bring this appeal from that judgment.

---

[3]The "Seek Work Plan" merely required that the individuals register weekly with the Department. The Department determined that this weekly registration was sufficient to satisfy the seek-work requirement because the individuals were only temporarily unemployed and were expected to return to work for their same employer in the near future.

[4]Alonto L. Dixon was out of California from July 20, 1973, to July 31, 1973, during which time he drove to Missouri with his wife to visit his mother and to check on property that he owned in Missouri.

Tony J. Ferraz left California on August 6 and returned August 10, 1973, during which time he drove his older daughter and her children to Dallas, Texas.

Alfred S. Ganoe left California on July 20 and returned August 16, 1973, during which time he drove with his family to West Virginia to visit an ill brother.

Alvin L. Howard was out of California for one week, during which time he flew to Florida to visit his ill father.

Samuel A. Lopez left California on August 7 and returned August 12, 1973, during which time he traveled to New Mexico on personal business.

Welton Moore was out of California from August 5 to August 11, 1973, during which time he drove to Louisiana with his family.

William Rupert was absent from California from July 21 to August 17, 1973, during which time he traveled to Minnesota on personal business.

Jeanette Small was out of California from July 26 to August 9, 1973, during which time she traveled to Texas to visit her parents.

Lonnie R. Tucker, Jr. left California on July 21 and returned on August 15, 1973, during which time he drove to St. Louis, Missouri, to visit his ill mother.

Gilbert R. Valdez was absent from California from August 2 to August 10, 1973, during which time he drove to Denver, Colorado, to visit relatives.

*Contentions*

Petitioners contend: (1) the Department has the burden to establish that suitable work existed "but for the failure of the individual petitioners to be present in California"; (2) the denial of these benefits deprives the individual petitioners of their constitutional right to travel, equal protection of law, and due process of law; and (3) the petitioner union had standing to sue and stated a valid cause of action.

*Discussion*

 Petitioners' argument that the Department has the burden of establishing that suitable work existed in California during the absence of these petitioners from this state is based upon the premise that petitioners' absences from California were not a contributing factor to their unemployment if no suitable work existed in California during those absences, and thus it must be demonstrated that the petitioners lost a work opportunity by absenting themselves from the California labor market.

Petitioners rely upon two grounds in presenting this argument. First, they rely upon the provision in section 1253, subdivision (c), which directs that unemployment compensation benefits be paid only if the unemployed individual is available for work. Petitioners contend that implicit in that availability requirement is the premise that suitable work exists for the individual in the labor market. It is urged that the implication of such a premise furthers the purpose of the availability requirement, which the petitioners allege is to insure that benefits not be paid to those who could be working. As further support for this construction of section 1253, subdivision (c), the petitioners cite section 100 of the Unemployment Insurance Code. Section 100, which is used as "a guide to the interpretation and application" of the Unemployment Insurance Code, specifies that "[i]t is the intent of the Legislature that unemployed persons claiming unemployment insurance benefits shall be required to make all *reasonable* effort to secure employment on their own behalf." (Italics added.)

The problem with petitioners' argument for such a construction of section 1253, subdivision (c), flows from the limited purpose which the petitioners ascribe to that provision. The purpose of section 1253 in its entirety is to ensure that benefits not be paid to persons who could be

working, and to encourage and help those persons to find suitable work. (Cf. *Spangler* v. *California Unemp. Ins. App. Bd.,* 14 Cal.App.3d 284, 287 [92 Cal.Rptr. 266].) Section 1253, subdivision (c), furthers those purposes by requiring that the claimant be generally available for reference or dispatch to any employer who might request such a worker from the Department. By absenting themselves from the state, the petitioners were not available for such a purpose. To hold that a claimant need not be available until an employer actually makes such a request would defeat the very purpose of the availability requirement. It is therefore apparent that petitioners' construction of section 1253, subdivision (c), which is contrary to the usual and accepted notions of availability, must fail.

The real thrust of petitioners' contention is that the requirement to report to or check in with the unemployment office on a weekly basis is a useless act. They would have the burden shift to the state to show that work was available rather than impose the burden on the individual to establish that he is ready, willing and able to accept available employment. This different approach to achieve the same end result is perhaps a philosophical difference, but certainly it is a change which is necessarily within the province of the Legislature, not of the courts. A ready corollary to "show available work opportunity" could come from the employer's side of the picture; a large company, needing many persons for a shift, would need to know how many employable persons were seeking a type of work. One or two assembly workers would not provide the needed manpower to get the production rolling again after the changeover was complete. Unquestionably, this was one reason the tentative recall dates were given to the individuals here involved; this aided the employer in having a ready work force. Needless to say, there are persons best qualified to work on one make of automobile, but we cannot conclude that available work on another make would be so different as to cause the individual to be without job opportunity where the second manufacturer needed employees in a specific field. It is the duty of the employment service to match the worker to a suitable job opening.

The second ground for petitioners' argument is in turn based on two recent cases concerning the validity of the unemployment compensation claims of two individuals sporting hirsute appearances: *Spangler* v. *California Unemp. Ins. App. Bd.,* *supra,* and *Chambers* v. *Unemployment Ins. Appeals Bd.,* 33 Cal.App.3d 923 [109 Cal.Rptr. 413]. The courts in those two cases held that the Department had the burden of producing

evidence that suitable work was available before denying benefits to the claimants for the time periods during which they had sported their unorthodox appearances.

The cases relied upon by the petitioners are clearly distinguishable from the instant case. *Chambers* and *Spangler* both involved situations in which the Department made subjective determinations as to the availability of the claimants on the basis of their unkempt appearances. The instant cases involve no such subjective determinations. The finding that the petitioning claimants removed themselves from the state is an objective determination. In such a case, the stricter *Chambers* and *Spangler* standard is neither necessary nor appropriate as a condition for the denial of benefits.

The *Spangler* and *Chambers* cases are not authority for the proposition that an individual may, in fact and voluntarily, make himself unavailable for work and still receive the unemployment benefits because the state did not affirmatively establish there was employment available. The philosophy which is apparent in the existing legislation is that the state is entitled to "see" the live bodies of the unemployed individuals who are actually seeking work. By this effort on the individual's part, the state will provide a temporary subsidy "in lieu of" work pay. When there is such voluntary absenteeism as in the instant case, the claimant is properly classified as on vacation without pay, and is under no circumstance actively seeking employment.

Accordingly, we hold that the trial court correctly determined that the petitioners made themselves unavailable, within the ambit of section 1253, subdivision (c), by removing themselves from California, and that the Department did not have to establish the fact that suitable work was available during the petitioners' absences from the state before denying benefits to those petitioners.

Petitioners cite late rulings by the Unemployment Appeals Board in support of their position. We have examined these, and particularly one case entitled *In the Matter of Clarence Gosha* (Precedent Benefit Decision No. P-B-260). We discern a striking difference between *Gosha* and the instant case. In *Gosha*, the employee left California via commercial airline to visit a bereaved aunt in Georgia. Instructions were left at his hiring hall by which he could be reached and could be returned to California and ready to accept employment within a 24-hour period. In

the instant case, no petitioner made such provision, in fact, not one of them held himself ready for employment during the period he was outside of California. The *Gosha* board, on the facts before it, stated (at p. 5 of the slip opinion): "The claimant's unemployment was involuntary, and there was nothing to indicate to the contrary; in fact, the Department concedes that the claimant's act of leaving the state did not cause him to lose a potential job opportunity. We find that this is an essential element in determining a claimant's eligibility for benefits." The holding was appropriate, for section 1253.1 provides: "An unemployed individual who is in all respects otherwise eligible for unemployment compensation benefits shall not be deemed ineligible for any week in which, for not exceeding two working days, he cannot reasonably be expected to work because: (a) There has been a death in his immediate family. . . ." This language, when coupled with claimant's ability *and intent* to return within 24 hours of notification of work certainly satisfied the reasonable requirements of the act. The sweeping legislative dictate contained in the last paragraph of the *Gosha* opinion is unnecessary to the opinion, and we believe far exceeds the authority of the board. We do not follow its dictate.

■ In their second contention, the petitioners assert that the denial of benefits deprives them of their constitutional right to travel, and of equal protection of the law. They cite *Shapiro* v. *Thompson,* 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1392] as establishing that the right to interstate travel is a constitutionally protected right. Here, the unavailability of any individual worker had nothing to do with the fact that he traveled interstate or intrastate, but hinged on his failure to report to the Department as required. It made no difference whether he visited a sick father in Florida, or went trout fishing in the Sierra. It therefore appears that *Shapiro* has nothing to do with the merits in the instant case. In *Chambers* (at p. 927), the court held that "California has a 'compelling state interest' in requiring that one seeking unemployment relief shall keep himself available for employment." While *Chambers* dealt with an interference with "peripheral" First Amendment rights, its reasoning (*id.,* at pp. 926-927) is equally applicable to the instant case:[5]

"California's Unemployment Insurance Code section 101 states, among other things, that section 1253, subdivision (c), requiring a person seeking unemployment benefits to keep himself 'available for work,' is

---

[5]Cf. *Galvan* v. *Catherwood* (S.D.N.Y.) 324 F.Supp. 1016, 1019.

'part of a national plan of unemployment reserves and social security, and is enacted for the purpose of assisting in the stabilization of employment conditions.' The law generally is considered to be highly beneficial and socially necessary legislation.

" . . . . . . . . . . . . . . . . .

"Essential to the integrity of California's unemployment relief program is the requirement that unemployed persons, when possible, render themselves available for work, for otherwise benefits would be paid to those who could be working, but choose not to, thus defeating the fundamental purpose of the statute." In addition, the classification denying benefits to persons who travel out of California for reasons other than seeking employment falls within "the area of economics and social welfare" (*Dandridge* v. *Williams,* 397 U.S. 471, 485 [25 L.Ed.2d 491, 90 S.Ct. 1153]), in which the classification only need be "rationally based and free from invidious discrimination" (*id.,* at p. 487) in order to be constitutionally permissible. The present classification satisfies both standards and therefore does not deprive the petitioners of their equal protection rights.

Petitioners' final constitutional argument, that a denial of benefits would violate due process of law because the claimants were not advised that they would be considered unavailable for work if they left California, has no merit. The Seek Work Plan, *supra,* specifically noted that the petitioners had to "be able to work and available for suitable work each week." Furthermore, the petitioners could have acquired more specific information by merely directing appropriate inquiries to the Department.

■ Petitioners' final contention is that the lower court erred in holding that petitioner UAW lacked standing and failed to state a valid cause of action in seeking a writ of mandamus.[6] They place primary reliance upon two cases: *Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158], and *California Sch. Employees Assn.* v. *Willits Unified Sch. Dist.,* 243 Cal.App.2d 776

[6]The lower court's conclusions of law did not expressly hold that the petitioner union lacked standing, but merely noted that the UAW failed to state a cause of action. Because the issue of the union's standing was briefed before both the lower court and this court, and because the trial court's conclusions of law do not negate the possibility that that tribunal found that the petitioner union failed to state a cause of action because it lacked standing, we address ourselves to both facets of this contention.

[52 Cal.Rptr. 765]. Respondents refute this contention, relying upon *Parker* v. *Bowron*, 40 Cal.2d 344 [254 P.2d 6], and *American Federation of Teachers* v. *San Lorenzo etc. Sch. Dist.*, 276 Cal.App.2d 132 [80 Cal.Rptr. 758]. We discuss these four cases in chronological order, and conclude that petitioner UAW has standing, but has failed to state a cause of action:

*Parker* v. *Bowron, supra,* the first of these four cases, involved a petition for writ of mandate to compel the City of Los Angeles to fix wages for city employees in certain classifications at least equal to the prevailing scale for similar employment in private industry. Petitioner Parker sued individually and as a member and secretary-treasurer of the Council of Federated Municipal Crafts of Los Angeles, California, a voluntary, unincorporated association whose members included various unincorporated labor unions. The court observed that " '[t]he granting of a writ of mandate is discretionary and it will be granted only where necessary to protect a substantial right and only when it is shown that some substantial damage will be suffered by the petitioner if said writ is denied.' [Citations.] 'The writ of mandate will not be issued except upon affidavit on the application of the party beneficially interested. (Code Civ. Proc. § 1086.)' [Citation.] 'The writ of mandate will not issue in a case where the plaintiff fails to show that it will subserve or protect some right or interest of his. . . . The writ will not lie "where it is apparent that the relator has no direct interest in the action sought to be coerced, and that no benefit can accrue to him from its performance." ' [Citation.]" (*Id.,* at p. 351.) Consequently, the *Parker* court held that "[i]nsofar as the council and its affiliated unions are concerned, . . . none of them has standing to maintain this proceeding. No facts are alleged which show any right or interest of the unions in the action sought to be commanded. There is no indication that any benefit, except possibly the incidental one of satisfying a very small proportion of their members, could accrue to them if the writ were issued. Nor could they suffer any detriment if it is denied. . . . None of the unions can have the requisite beneficial interest in enforcing a duty owed by the city to its employees." (*Id.,* at p. 354.)

In *Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* the court distinguished *Parker* on the ground that the unions in *Parker* were unincorporated associations. (*Id.,* at p. 284; see also *Residents of Beverly Glen, Inc.* v. *City of Los Angeles,* 34 Cal.App.3d 117, 122-123 [109 Cal.Rptr. 724].) *Professional Fire Fighters* held that the incorporated petitioner in that case had standing, observing that *Parker* "followed

from the then existing rule that an unincorporated association may not sue or be sued as an entity . . . . Such rule has since been relaxed in regard to unincorporated labor unions. [Citations.]" (*Id.,* at p. 284, fn. 7.) The only logical implication which may be drawn from the latter portion of the preceding statement is that the court believed that the relaxation in regard to the standing of an unincorporated labor union had eclipsed the *Parker* holding.

In *California Sch. Employees Assn.* v. *Willits Unified Sch. Dist., supra,* 243 Cal.App.2d 776, cited by petitioner UAW, the court determined that the unincorporated petitioner union had standing.

Without unnecessarily belaboring the issue, it may be noted that the three prior cases clearly demonstrate that *Parker* has been repudiated and that petitioner UAW has standing to be a party to a suit such as the instant one. An attempt to distinguish *Fire Fighters, supra,* and *Willits, supra,* from the instant action on the basis that the former cases involved suits by a union against the employer of its members would be futile. A labor union is entitled to represent its members in an action which is inseparably founded upon its members' employment. Unquestionably, the case at bar, in which the members' employer is the real party in interest, is such an action. Accordingly, petitioner UAW has standing to be a party petitioner in the immediate action.

However, petitioner UAW has failed to state a cause of action. In this regard, *American Federation of Teachers* v. *San Lorenzo etc. Sch. Dist., supra,* 276 Cal.App.2d 132, cited by respondents, is pertinent. There, the court stated (at pp. 136-137): "The actual issue here is not one relating to the right of a labor union to represent its members . . . . The issue is one of pleading, namely, [has this petitioner] stated a cause of action? . . . . There is no allegation in the petition that any right of the union . . . has been invaded, and [the petitioner does not ask] that any relief be granted to [it]." While petitioner UAW could bring this action on behalf of its individual members when those members are allegedly injured by a wrongful denial of benefits, the immediate action names the injured members themselves as petitioners. Hence, the union is an unnecessary party which here fails to state a cause of action.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 4, 1976.