[Civ. No. 68469. Second Dist., Div. Two. Feb. 17, 1984.]

MARY THEROUX et al., Plaintiffs and Respondents, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

**4**

COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Talmadge R. Jones, Deputy Attorney General, for Defendants and Appellants.

Tanzer, Rosato, Samuels & Weisz, Lowell R. Wedemeyer and Barry M. Weisz for Plaintiffs and Respondents.

OPINION

**GATES, J.**—Defendants State of California and State Controller Ken Cory appeal from the judgment entered in favor of Mary Theroux, Susan Balliger and Christine Morales contending: "[I.] The exclusion of respondents from Senate Bill 91 [SB 91] does not violate constitutional due process or equal protection provisions. [II.] The State Controller cannot disburse state monies contrary to the legislative purpose of Senate Bill 91, even if unconstitutional."

Senate Bill No. 91 (now Stats. 1979, ch. 192) awards a lump sum payment to certain classes of state employees including "current employees on or after May 31, 1979," and "those employees who retired between October 1, 1978, and May 31, 1979," in order "to provide compensation equivalent to that which they would have otherwise received from October 1, 1978, through June 30, 1979, had they received a 7 percent salary increase on October 1, 1978." (§ 1.5, subd. (a)(2).) The bill declared the adjustments "are provided not as a retroactive salary increase, but for continued services rendered on or after the effective date of this act to the extent that any such services may be rendered. Recent events make these adjustments necessary to ensure the continued recruitment and retention of qualified and competent state employees." (§ 1.5, subd. (b).) It did not become effective, however, until July 2, 1979.

Respondents, three former permanent state employees who separated from state service prior to May 31, 1979, for reasons other than retirement, filed a class action complaint for damages on August 20, 1979,[1] challenging their exclusion from the salary appropriation. In particular, they alleged "that Senate Bill 91 and specifically that provision contained therein requiring a state employee be employed in said capacity on May 31, 1979 in

---

[1]By stipulation and order of August 28, 1981, the matter of class relief was abated to permit the individual legal claims of respondents to be resolved at trial and on appeal.

order to be entitled to the benefits of the pay increase violates the equal protection and due process provisions of both the United States and California Constitutions in that it arbitrarily, intentionally, and unreasonably withholds monies earned by plaintiffs while employees of the defendant under the guise of declaring said monies to be a 'bonus' for current employees." They further asserted "that said monies are a *retroactive* cost-of-living pay increase and that as such each state employee employed on or after October 1, 1978 is entitled to his or her proportional increase." (Italics added.)

Since it was not disputed that respondents, but for their respective dates of termination prior to May 31, 1979, would have qualified for the retroactive salary adjustments provided for by Senate Bill No. 91, the parties filed cross-motions for summary adjudication of the question of the constitutionality of the bill's "cut off" eligibility date. Respondents prevailed and judgment was entered in their favor awarding principal in the amount of $316.41 to Theroux, $423.55 to Balliger and $388.11 to Morales. It is from this judgment that the instant appeal is prosecuted.

■ Our Supreme Court in *Jarvis* v. *Cory* (1980) 28 Cal.3d 562 [170 Cal.Rptr. 11, 620 P.2d 598] was asked to decide whether Senate Bill No. 91 violates the "extra compensation" clause of the California Constitution (art. IV, § 17) by granting additional compensation to certain state employees for services already rendered. The court rejected an assertion that under the terms of the bill the award was prospective rather than retroactive, but nevertheless concluded "the extra compensation clause is not offended when state employees receive retroactive salary adjustments for periods during which they worked with justifiable uncertainty regarding their salary levels." (*Id.,* p. 579.) The court pointed out that "under the extraordinary circumstances of fiscal year 1978-1979, state employees' salary levels were a matter of legitimate, on-going dispute and uncertainty, . . ." (*Id.,* p. 573.)

■ In an effort to support their claim that respondents' exclusion from the benefits of Senate Bill No. 91 is lawful, appellants point out that classifications affecting salary increases for state personnel, as opposed to employment itself, are not subject to the "strict scrutiny" standard of review but will be upheld whenever the Legislature has drawn a distinction between classes which bears some rational relationship to a conceivably legitimate state purpose. (*American Federation of Teachers* v. *Los Angeles Community College Dist.* (1980) 111 Cal.App.3d 942, 945-946 [168 Cal.Rptr. 912]; *California State Employees' Assn.* v. *Flournoy* (1973) 32 Cal.App.3d 219, 237 [108 Cal.Rptr. 251].) They then argue that "[a]ny doubt as to the 'rational basis' for Senate Bill 91 was forever removed" by the decision in

*Jarvis* v. *Cory, supra,* 28 Cal.3d 562, wherein the court responded as follows to a claim that Senate Bill No. 91 is invalid as a gift of public funds serving no substantial public purpose (Cal. Const., art. XVI, § 6): ". . . On the contrary, the Legislature found that the adjustments made by the bill were 'necessary to ensure the continued recruitment and retention of qualified and competent state employees.' We will not disturb the Legislature's finding of a public purpose so long as it has a reasonable basis. [Citation.]

"In this case, we cannot doubt the substantiality of the purpose stated. Nor can we doubt that SB 91 serves the purpose by assuring state employees they will not be abandoned in troubled times, and by raising salaries to a level more competitive with those in the private sector. [Citation.] Furthermore, our discussion has revealed at least three other public purposes served: (1) avoidance of legal disputes over colorable equal protection claims [as between state and local employees], (2) provision of funds to allow salary-setting bodies to fulfill their duties, and (3) resolution of continuing uncertainty about proper salary levels. SB 91 is therefore not a gift of public monies." (*Id.,* pp. 578-579, fn. 10.)

Contrary to appellants' assertions, however, the foregoing language is not dispositive of the question here tendered. ■ The court in *Jarvis* v. *Cory* was called upon to determine, and did expressly determine, only that the retroactive salary adjustments provided for by Senate Bill No. 91 did not constitute extra compensation or a gift of public monies in violation of the California Constitution and that they served several public purposes. It was not presented with, and hence did not speak directly to, the issue now before us.

■ In deciding whether the classifications created by Senate Bill No. 91 bear a rational relationship to a conceivably legitimate state purpose, we must, of course, consider those classifications which *actually resulted* under the bill, rather than merely those the Legislature might have *intended.* It is certainly possible the Legislature was attempting to devise a scheme which would provide only *prospective* benefits calculated on the basis of antecedent facts in order to ensure the continued recruitment and retention of qualified and competent state employees.[2] Nonetheless, seemingly due to an

---

[2]We observe, however, that even if one could be certain that the Legislature did "intend" to create a pay plan that was, at least facially, essentially prospective, it would still be impossible to determine what motivated that intent. It is certainly not unreasonable to assume that, lacking the prescience to foresee the rationale and holding of *Jarvis* v. *Cory, supra,* 28 Cal.3d 562, our legislative brethren were more fearful that clearly retroactive salary adjustments would be judicially rejected than they were anxious to deprive any who had labored in the service of the state of remuneration at least approaching the recognized prevailing wage structure. In fact, the Assembly Office of Research report, supplied us by appellant, expressly advised:

"Current law requires the State Personnel Board (SPB), in establishing state salary ranges, to consider the prevailing wage rates for comparable service in other public employment

error in draftsmanship, it in fact fashioned a *retroactive* adjustment scheme, the validity of which has now been upheld.

One unfortunate consequence of this perhaps unexpected development is that respondents have been denied retroactive salary adjustments which they had "earned" as surely as had their fellow employees who also left government service prior to the effective date of Senate Bill No. 91, albeit after the arbitrarily selected May date.[3] That is to say, they too had worked willingly at their prior salary rates during the period of uncertainty, and with equal justification for contemplating the likelihood of ultimate salary corrections in the future.

We can conceive of no reasonable justification for such a distinction. It furthers none of the policies articulated in *Jarvis* v. *Cory, supra,* 28 Cal.3d 562, 578-579, footnote 10. Certainly the cases relied upon by appellants as "authority for withholding economic benefits to persons based upon a qualifying date" (e.g., *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281]; *American Federation of Teachers College Dist., supra,* 111 Cal.App.3d 942) or "the occurrence of particular events at a certain time" (e.g., *International Union of United Auto. etc. Workers* v. *Department of Human Resources Dev.* (1976) 58 Cal.App.3d 924 [130 Cal.Rptr. 368]; *Hunt* v. *Alum Rock Union Elementary Sch. Dist.* (1970) 7 Cal.App.3d 612 [86 Cal.Rptr. 663]), do not sustain the utilization of a "cutoff" date to withhold full compensation for services already rendered from one group of employees while granting it to others otherwise similarly situated. The arbitrariness of such a classification is readily apparent.

 In addition, in our view, to deny compensation under such circumstances would also amount to an unconstitutional impairment of a vested contractual right. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) It has often been said that public employment in California is not held by contract but by statute and that, insofar as the duration of such employment

---

and in private business. In May 1979, the SPB estimated that other salaries will lag behind comparable nonstate rates by 16.3% effective July 1, 1979. The rate of inflation for California is projected to increase by 9% between July 1, 1978 and June 30, 1979. Between July 1977 and June 1979 the compensation of state employees has not been adjusted except for an average 1% offset to most state employees in the form of increased state contributions for health benefits. Last year's 2.5% salary increase in the budget was eliminated by the Administration due to expressed concern for the effects of Proposition 13." (Assem. Third Reading to Sen. Bill No. 91 (1979-80 Reg. Sess.) June 11, 1979.)

[3] In response to our solicitation, the parties hereto acknowledged their inability to discern any basis for the adoption of the particular date of May 31, a date that totally destroyed any prospective application of the legislation, other than the fact that utilization of the end of any monthly pay period would enable the state to avoid certain administrative problems in processing its payroll.

is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law. (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970].) Nonetheless, it is equally well settled that "public employment gives rise to certain obligations which are protected by the contract clause of the Constitution, including the right to the payment of salary which has been earned." (*Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 853 [179 P.2d 799]. See also *Olson* v. *Cory* (1980) 27 Cal.3d 532, 537-538 [636 P.2d 532]; *Miller* v. *State of California, supra,* 18 Cal.3d 808, 815.)

■ During the period in question respondents' right to full compensation for services rendered matured immediately upon their rendition, regardless of the date the amount of such compensation was finally fixed. Although legislative impairment of vested contract rights may be warranted under certain circumstances on the grounds of necessity (*Valdes* v. *Cory* (1983) 139 Cal.App.3d 773, 789-791 [189 Cal.Rptr. 212]), no impairment was justified here. As we have previously noted, it is an undisputable fact that respondents' salary levels were as much in doubt because of a legitimate, ongoing dispute at the time their services were rendered as were those of the workers who retired after October 1, 1978, or who left government service on or after May 31, 1979, but before the enactment of the subject legislation. To allow such an arrangement to stand would in effect create two separate pay scales for workers doing the same job, a situation violative of the primary principle of the Civil Service Act " 'that like salaries shall be paid for comparable duties and responsibilities.' " (*State Trial Attorneys' Assn.* v. *State of California* (1976) 63 Cal.App.3d 298, 304 [133 Cal.Rptr. 712].)

Appellants next contend that "[b]ecause the intent of Senate Bill 91 is to exclude persons who separated from state service prior to May 31, 1979, the State Controller is without constitutional authority to disburse any funds to respondents absent a further expression from the Legislature." As previously noted, however, this "exclusion" occurred at a time when it was anticipated that the adjustments provided by Senate Bill No. 91 would operate prospectively only, an objective that was defeated by the manner in which the bill was drafted.

■ In any event, "while the separation of powers doctrine may restrict a court from directly ordering the Legislature to enact an appropriation law, the doctrine does not preclude the judiciary from decreeing that funds that have been appropriated by the Legislature should be paid without regard to an improper or invalid legislative restriction. If, in the absence of such invalid restriction, appropriated funds are reasonably available for the ex-

penditures in question, the separation of powers doctrine poses no barrier to a judicial order directing the payment of such funds." (*Mandel* v. *Myers* (1981) 29 Cal.3d 531, 542 [174 Cal.Rptr. 841, 629 P.2d 935].)

In the case at bar appellants have argued that the funds remaining from the initial appropriation are inadequate to pay appropriate salary adjustments to all entitled employees once the restrictions are removed. However, should this prove so, we must "presume the Legislature will give meaning to our ruling and 'that the proper steps will be taken to appropriate the amount required' to pay such [adjustments]. [Citation.]" (*California State Employees' Assn.* v. *Cory* (1981) 123 Cal.App.3d 888, 895 [176 Cal.Rptr. 904].) In any event, we need here only determine, as we do, respondents' entitlement to the subject salary adjustments rather than anticipate collection problems which may or may not materialize.

The judgment is affirmed.

Beach, J., concurred.

**COMPTON, Acting P. J.**—I concur but because of my dedication to the doctrine of the separation of powers I feel compelled to express some additional thoughts.

Judicial decisions, which directly or *indirectly* mandate the Legislature to appropriate public funds for a particular purpose, are clearly an affront to the doctrine of separation of powers. In my opinion, however, that doctrine appears less forbidding when the Legislature is acting in the role of an employer.

Further, from the history of the legislation and the background against which it was enacted, it is obvious to me that the Legislature initially desired the very result which we reach here but was persuaded that, because of the delay inherent in the legislative process and the additional delay occasioned by the need to override the Governor's veto, such result was not attainable.

Since the Supreme Court in *Jarvis* v. *Cory* (1980) 28 Cal.3d 562 [170 Cal.Rptr. 11, 620 P.2d 598], rightly or wrongly, swept aside the prohibition against retroactive pay raises, it seems only fair that the Legislature be permitted to do what it would have done absent the fear of being frustrated by the courts.

At oral argument in this matter, we were advised by the Attorney General that, in addition to the compensation for these employees, the state would

be required to fund a substantial administrative cost in identifying and locating the employees who are no longer in the employ of the state.

Since this is a class action and further proceedings to fashion a judgment are contemplated, I suggest that our holding does not, a fortiori, require the state to seek out the beneficiaries of this decision. A procedure should be developed whereby payment will be made only to those persons who present a claim within a fixed reasonable period of time.