[No. G000910. Fourth Dist., Div. Three. Apr. 16, 1986.]

ANAHEIM ELEMENTARY EDUCATION ASSOCIATION, CTA/NEA,
Plaintiff and Appellant, v.
BOARD OF EDUCATION OF THE ANAHEIM CITY SCHOOL
DISTRICT, Defendant and Respondent.

1154

---

**COUNSEL**

A. Eugene Huguenin, Jr., Raymond L. Hansen, Charles R. Gustafson and Michael R. White for Plaintiff and Appellant.

Breon, Galgani, Godino & O'Donnell and David G. Miller for Defendant and Respondent.

OPINION

WALLIN, J.—Anaheim Elementary Education Association, CTA/NEA (the Association) appeals the denial of its petition for writ of mandate to compel the Board of Education of the Anaheim City School District (the District) to change its policy denying temporary certificated employees their statutory reemployment rights. The court found the Association had no standing to bring the action because the two named individuals were not members of the Association and denied the writ.

I

The Association is an unincorporated organization of certificated teaching employees of the District. Pursuant to the Educational Employment Relations Act (Gov. Code, § 3540 et seq.), the Association is an "employee organization" and the "exclusive representative" of certificated teachers. (Gov. Code, § 3540.1, subds. (d) and (e).)

Heidi Chipman and Barbara Warnock were employed as temporary teachers for the entire 1981-1982 school year. During that school year, both teachers were dues paying members of California Teachers Association, the Association's statewide affiliate, but did not pay dues to the Association. As temporary teachers, they were members of the bargaining unit of the District's certificated teachers which was exclusively represented by the Association.

Education Code section 44918 provides that a temporary teacher who serves at least 75 percent of the number of regular school days in any school year acquires the right to "be reemployed for the following school year to fill any vacant positions in the school district for which the employee is certified and qualified to serve." In September, 1982, the Association requested the District reemploy Chipman and Warnock as temporary teachers for the 1982-1983 school year. The District formally declined on September 29, 1982. After exhausting its administrative remedies, the Association filed this action in mandamus in April 1983, in its representative capacity pursuant to Government Code section 3543.8. The amended petition seeks to compel the District to 1) reemploy Chipman and Warnock and "others similarly situated as full-time temporary employees"; 2) restore rights and benefits denied them; and 3) modify its policy regarding reemployment of temporary teachers to conform with existing law.

The superior court found the two individuals were not members of the Association either when the District refused to rehire them or when the

action was filed; thus, the Association had no standing to bring the action. On appeal, the Association contends it has standing to bring an action against the District to enforce the statutorily guaranteed employment rights of Chipman and Warnock, who were members of the bargaining unit at the time their right to reemployment vested. The District asserts the Association is precluded from bringing an action on behalf of anyone other than a dues paying member by the language of the act, which provides: "Any employee organization shall have standing to sue in any action or proceeding heretofore or hereafter instituted by it as representative and on behalf of one or more of its members. . . ." (Gov. Code, § 3543.8.) We find the Association has standing to bring the action and reverse the judgment.

## II

The Educational Employment Relations Act (Gov. Code, § 3540 et seq.) was enacted in 1975 "to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by such organizations in their professional and employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of educational policy." (Gov. Code, § 3540.) It repealed the Winton Act (former Ed. Code, § 13080 et seq.), which had given school employees the right to organize for representation on employment relations but had expressly rejected the collective bargaining approach of having a single employee organization represent all certificated employees. (*Berkeley Teachers Assn.* v. *Board of Education* (1967) 254 Cal.App.2d 660, 672 [62 Cal.Rptr. 515].) Rather, the Winton Act required the public school employer to "meet and confer" with representatives of employee organizations and provided for a "negotiating council" where there was more than one organization representing certificated employees. (Former Ed. Code, § 13085, repealed 1976, now § 3540.) (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 411, p. 2674.)

The Winton Act contained a section regarding an employee organization's standing to sue which was worded almost identically to Government Code section 3543.8: "Any employee organization shall have standing to sue in any action or proceeding heretofore or hereafter instituted by it as representative and on behalf of one or more of its members with respect to any matter within the scope of its representation." (Former Ed. Code, § 13084.5, repealed 1976, now § 3543.8.) Since the statutory scheme at

that time did not encompass the concept of exclusive representation, the legislative intent was obviously to authorize an organization to represent only its own membership. In construing another section of the Winton Act the court in *Berkeley Teachers Assn.* v. *Board of Education, supra,* 254 Cal.App.2d 660, stated: "A reading of the statute as a whole, however, clearly indicates that 'member' is used in its normally accepted sense and is to be given its ordinary and usual meaning of a certificated employee who joins an employee organization representing certificated employees." (*Id.,* at p. 668.)

In contrast to the Winton Act, the EERA provides expressly for exclusive representation and collective bargaining: "Employee organizations shall have the right to represent their members in their employment relations with public school employers, except that once an employee organization is recognized or certified as the exclusive representative of an appropriate [bargaining] unit . . . only that employee organization may represent that unit in their employment relations with the public school employer." (Gov. Code, § 3543.1, subd. (a).)

### III

The California Supreme Court has given us some principles to use when construing the statutory language of the EERA: "First, we must read the act as a whole rather than, in preoccupation with a single phrase, ignore its position in the structure of the statute. . . . Second, we recognize that in enacting the EERA, the Legislature did not purport to invent anew the law of labor relations. Much of the act is no more than an unremarkable application of standard collective bargaining concepts well established in other private and public sector contexts to public education employment." (*San Lorenzo Education Assn.* v. *Wilson* (1982) 32 Cal.3d 841, 845-846 [187 Cal.Rptr. 432, 654 P.2d 202].) Thus, both state and federal labor cases are available for our guidance.

It is settled that "[a] labor union is entitled to represent its members in an action which is inseparably founded upon its members' employment." (*International Union of United Auto. etc. Workers* v. *Department of Human Resources Dev.* (1976) 58 Cal.App.3d 924, 935 [130 Cal.Rptr. 368]; see also *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158]; *California Sch. Employees Assn.* v. *Willits Unified Sch. Dist.* (1966) 243 Cal.App.2d 776 [52 Cal.Rptr. 765].) Furthermore, a union can bring a representative action even if, at the time of the action, the affected employee is not a member or the union is no longer the exclusive representative.

██ In *Pittsburgh Federation of Teachers, etc.* v. *Aaron* (W.D.Pa. 1976) 417 F.Supp. 94, the union filed an action on October 30 objecting to a residency requirement for teachers which was effective November 1. Although no members were affected at the time the suit was filed, the court held the union had standing because its members were affected at the time of the district court's decision. (*Id.*, at p. 95.)

In *Amalgamated Meat Cutters, etc., Local 195* v. *Feder & Co.* (E.D.Pa. 1964) 234 F.Supp. 564, the employer objected to the union's standing to represent the employee in the enforcement of a settlement because at the time the complaint was filed, "the collective bargaining agreement had expired, the [union] had ceased to be the exclusive bargaining representative for the employees, and [the employee] was no longer a member of the union." However, because the union was the exclusive representative and the employee was a member of the union at the time the settlement was made, the court found the union had standing to represent the employee when the employer later breached the settlement.

In *California School Emp. Assn.* v. *Sequoia etc. School Dist.* (1969) 272 Cal.App.2d 98 [77 Cal.Rptr. 187], the union had standing to represent its discharged employees when the district discontinued its cafeteria service. The court held: "It is sufficient that the controversy affects labor and services which . . . must be rendered by those of a class which [the union] is organized to represent." (*Id.*, at p. 104.)

██ The concept of exclusive representation creates special rights and obligations in the employee organization so certified and distinguishes it from other employee organizations: "So long as a labor union assumes to act as the statutory representative of a craft, it cannot rightly refuse to perform the duty, which is inseparable from the power of representation conferred upon it, to represent the entire membership of the craft." (*Steele* v. *L. & N.R. Co.* (1944) 323 U.S. 192, 204 [89 L.Ed. 173, 184, 65 S.Ct. 226]; see also, *Vaca* v. *Sipes* (1967) 386 U.S. 171, 177 [17 L.Ed.2d 842, 850, 87 S.Ct. 903].) This duty has been expressly incorporated into the EERA: "The employee organization recognized or certified as the exclusive representative for the purpose of meeting and negotiating shall fairly represent each and every employee in the appropriate unit." (Gov. Code, § 3544.9.) To confer upon an exclusive representative the task of representing all employees in the unit without empowering it with the standing to challenge the employer's unlawful actions on behalf of all employees would be unreasonable.

██ In *Andrews* v. *Board of Supervisors* (1982) 134 Cal.App.3d 274 [184 Cal.Rptr. 542], the court interpreted a section of the Meyers-Milias-

Brown Act (MMB Act), which governs employer-employee relations on the local government level. Section 3503 provides: "Recognized employee organizations shall have the right to represent their members in their employment relations with public agencies. . . ." (Gov. Code, § 3503.) The court discussed the dilemma presented by a literal interpretation of "members." "[R]espondent points out that restricting representation solely to members of employee organizations would be inconsistent with the purpose of the MMB Act, which is in part to permit public employees as a unit and acting in concert to reach binding agreements with their employers. . . . The word 'members' thus refers, not to formal members of the employee organization, but to *members of the unit* represented by the employee organization." (*Id.*, at pp. 280-281.)

Applying a similar commonsense approach to the EERA, we conclude it is more reasonable to read the word "members" in Government Code section 3543.8 as referring to members of the bargaining unit rather than members of the employee organization itself when the standing to sue of an exclusive representative is in issue. Restricting the representation to those who are dues paying members would create a distinction between joining and nonjoining employees we think was unintended by the Legislature.

## IV

Since we have decided the standing issue in favor of the Association, it urges us to reach the merits of the action and issue the writ. However, there are factual issues involved in a determination of the two individuals' qualifications to serve. (Ed. Code, § 44918.) Although our Supreme Court has recently construed the meaning of this phrase in the identical context (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500 [204 Cal.Rptr. 711, 683 P.2d 710]), it did so only for the guidance of the trial court on remand. As the court below in this action limited its findings to the issue of standing, we remand for a factual hearing on the merits of the Association's petition.

The judgment denying the writ is reversed and the matter is remanded to the trial court.

Trotter, P. J., and Crosby, J., concurred.