[No. B020825. Second Dist., Div. Seven. Sept. 23, 1987.]

Estate of EDESSA HARTLEY ROSE, Deceased.
BARBARA BRUNNER, as Co-administrator, etc., et al., Petitioners and Respondents, v.
CLAREMONT McKENNA COLLEGE, Claimant and Appellant.

**COUNSEL**

Wolver & Wolver and Elizabeth A. Ratner for Claimant and Appellant.

Richard F. Healy for Petitioner and Respondent.

**OPINION**

**JOHNSON, J.**—Edessa Hartley Rose died in November 1981, leaving a legacy to Claremont McKenna College. The amount of the legacy was disputed between the estate administrators and the college. The parties finally agreed as to the principal of the legacy but continued to dispute the amount of interest on the legacy due the college. The superior court found the applicable interest rate to be 4 percent per annum. The college appeals.

At the time of Ms. Rose's death, Probate Code section 162 provided for interest at 4 percent on general pecuniary legacies not paid prior to the first anniversary of the testator's death. In 1982, the Legislature amended section 162 to provide for interest at the same rate as money judgments: 10

percent. (Stats. 1982, ch. 520, § 1.) However, an uncodified section of the 1982 statute provided: "The amendment to Section 162 of the Probate Code . . . shall not affect the estate of any person dying before the effective date thereof." (*Id.,* at § 12.) The effective date of the statute was January 1, 1983.

The 1982 statute created two classes of legatees awaiting distribution of their legacies: (1) those, such as the college, whose testator died before the effective date of the higher interest rate and (2) those whose testator died after the effective date of the higher interest rate. The first class of legatees-in-waiting receive only 4 percent on their legacy even if distribution takes place after the effective date of the higher interest rate. ▊ The college claims the statute denies it equal protection because there is no rational basis for not including all undistributed legacies in the higher interest rate.

▊ "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Purdy & Fitzpatrick v. State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) ▊ This case does not involve suspect classifications or fundamental interests, therefore the Legislature's classification must be upheld if it bears some rational relationship to a conceivably legitimate state purpose. (*Theroux* v. *State of California* (1984) 152 Cal.App.3d 1, 5 [199 Cal.Rptr. 264].)

▊ We do not find the college's claim frivolous but we do find it unpersuasive. There are at least two rational bases for leaving the 4 percent interest rate in place as to testators who died before January 1, 1983. First, the Legislature may not have wanted to interfere with the estate plans of this class of testators. The interest paid to the legatees will necessarily reduce the bequest to the residual beneficiary. The testator would have had an understanding of the potential residue calculated in part on an interest rate of 4 percent for undistributed legacies. The testator's plan with respect to the residual beneficiary could be seriously disrupted if the state more than doubled that interest rate after her death. Second, the Legislature may not have wanted to disrupt estate administrators' existing investment programs. Making the higher interest rate applicable to estates already in probate could require many administrators to disinvest and reinvest estate assets in order to meet the 10 percent interest rate on undistributed legacies. The law increasing the interest rate was signed by the Governor in August 1982, thus administrators would only have had four months before the new interest rate took effect to square away their investments. The Legislature may have wished to avoid the potential disruption of estate administration and the market place resulting from a sudden shift away from more conservative investments.

The college relies on *Theroux* v. *State of California, supra,* 152 Cal.App.3d 1, one of the few cases to strike down a legislative classification for lack of a rational basis. In *Theroux,* the plaintiffs challenged their exclusion from a lump sum payment to state employees employed on or after May 31, 1979. Plaintiffs had left state service prior to that date. Plaintiffs claimed there was no rational basis for the eligibility cutoff date. Finding the payment to be a retroactive salary adjustment for employees who worked during the 1978-1979 fiscal year, the court concluded there was no basis "to withhold full compensation for services already rendered from one group of employees while granting it to others . . . similarly situated." (*Id.,* at p. 7.)

The only similarity between *Theroux* and the case before us is they both involve statutes with eligibility cutoff dates. But while the court in *Theroux* found no rational basis for the cut off, we have identified two rationales for the cutoff in the case at bench. Thus we conclude this legislative classification does not violate the equal protection clause.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.