IRENE E. MOATS *et al. v.* WILLIAM C. COOK, *State Superintendent of Schools*

(No. 7499)

Submitted November 29, 1932. Decided December 6, 1932.

*Brown W. Payne,* for relators.

*H. B. Lee* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for respondent.

LIVELY, JUDGE:

Relators are members of the advisory council of the state board of education under appointment by the governor, and as such are entitled to receive a salary of $1,000 per annum, payable quarterly upon requisitions drawn by the state superintendent of schools. They ask for mandamus against the latter officer commanding him to make requisitions in their favor upon the auditor for their respective quarterly salaries for the quarter ending September 30, 1932. The state superintendent demurs to the petition on the ground that chapter 20 of the Acts of the Legislature, Extraordinary Session of 1932, abolished the position held by relators, and that said act is a valid and existing law and therefore no requisitions for their services can be issued.

Relators contend that said chapter 20 of the Extraordinary Session in so far as it attempts to abolish their respective offices is null, void and unconstitutional because it violates section 30 of Article VI of the Constitution, because that part of the act abolishing such positions is in no way covered by the title to the act.

The issue is clear and concise. Does the title to said chapter 20 include in its scope, construed most comprehensively, the abolishment of the offices held by relators? If so, the act in that respect is valid; if not, the act in that respect is void.

The title to the act is:

"AN ACT authorizing and directing a reduction in the salary of each and every holder of a public office or position, or place of public employment in the state of West Virginia, or any of its subdivisions, from and after the date that this act becomes effective, or as soon thereafter as the term of the present incumbent of an office shall expire, or existing legal contracts of employment shall terminate, providing certain exceptions thereto, and also fixing the salary of the holders of certain other offices, public positions or places of public employment in this state, and certain political subdivisions thereof, as hereinafter set out and specified, and providing penalties for the violation of this act."

Subdivision (v) of section 5 of the act reads:

"The positions of members of the state board of education and of each of its advisory members, together with its secretary and director are hereby abolished and the duties heretofore performed by said state board of education and its employees are hereby transferred to the state board of public works, which board with the aid of an additional secretary which it is hereby authorized to employ at a salary not to exceed three thousand six hundred dollars per annum, and a stenographer for the secretary at a salary not to exceed fifteen hundred dollars per annum, shall perform said duties without additional compensation."

Section 30, Article VI of the Constitution, is as follows:

"No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed * * *."

This Court has rendered many decisions touching the question here involved, the latest of which is *Bedford Corporation* v. *Price,* handed down on October 28, 1932, which reviews the former decisions and contains a clear statement of the law. The "object" of an act as that word is used in said section 30, Article VI, Constitution, means the matter or thing forming the groundwork of the act. The act may contain many parts germane to the title, but they must be such that when traced back will lead the mind to the object as expressed in the title as their general head. Courts strive to uphold legislative acts, and construe most liberally and comprehensively the titles thereto in order to validify all their parts. On the other hand, if any object is found in the body of the act which is not so expressed in the title and which cannot logically be traced back to the title liberally construed, as its generic head, that part so found in the body of the act is void. The Constitution is the supreme law of the land and must be upheld under the oaths of all executive, legislative and judicial officers. The legislature represents the state, but it can do nothing which the Constitution prohibits; and its mode of action in which it has power to do must conform

to the requirements of the Constitution, else its acts are void—they bind no one. The legislature together with all the world is charged with notice of the constitutional limitations and restrictions. There is a strong presumption in favor of the validity of a legislative act, and where there is a doubt as to its validity, the doubt is resolved in its favor. On the other hand, courts must preserve unimpaired the organic law, and they may not disregard a plain mandate directed against surreptitious legislation. It would be supererogatory to repeat at length the purposes of the Consititutional inhibition that only one object must be expressed in the title to an act, and that if any object is found in the act which is not expressed in the title the act shall be void as to so much thereof as not expressed. In short, it is to prevent ''log rolling'' legislation; prevent surprise or fraud on the legislators themselves; and to apprise the people of the subjects of legislation that are being considered ''in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.'' Cooley's Const. Law (7th Ed.), p. 202.

Bearing these principles in mind, we discuss and decide the issue. The title to the act by its most liberal construction expresses the purpose (1) of directing a reduction in salaries of officers or those holding public positions in the state government or any of its subdivisions; (2) fixing salaries of the holders of certain offices and public positions in the state government and certain political subdivisions thereof; and (3) providing penalties for violations. Subsection (v) of section 5 abolished the position of the advisory members of the state board of education, the position then held by relators, and transfers the duties thereof to the board of public works. By reading the title which gives as the object of the act the reduction and fixing salaries, who would conceive, except by a stretch of imagination, that the act would abolish any office? Would the people have any intimation from reading the title that their state board of education was to be abolished, and have opportunity to go before the legislature or its appropriate committees to be heard thereon? The reduction of salaries or even the abolishment of salaries does not mean the abolishment of an office, for salary of an office is only one of its perquisites. Many an office is without pay or emoluments.

For example is the constitutional commission, authorized by Acts 1931, the members whereof gave time and valuable service to the state without money or other compensation. It was argued in *State Road Com.* v. *Bridge Com.*, 112 W. Va. 514, 166 S. E. 11, that a revision of salaries paid all public officers and balancing of the budget found in the Governor's call would authorize the abolishment of the bridge commission, but the court, speaking through Judge Hatcher's able opinion, said: ''It is manifest that the above items (revision of salaries and balancing budget) do not refer in terms to the abolition of an office. * * * The suggestion is made that item 3 (revision of salaries of all public officials) is capable of such construction. Webter's New International Dictionary defines the word 'revision' as a 're-examination or careful reading over for correction or improvement.' This definition expresses both the popular and the legal notion of the word. The right to revise, to correct or improve, does not imply the right to destroy. To the contrary, an object destroyed is not capable of revision; its existence must continue if it is to be corrected or improved. Therefore item three supports only the determination of compensation for officials.'' The reduction of a salary does not cannote the abolition of an office; on the other hand it denotes that the office will be continued at a reduced salary.

The attorney general argues that the act was intended for the economic purpose of reducing governmental expenses, and the abolishment of offices would constitute such reduction by eliminating salaries; and therefore the subject matter of abolishing offices is but a detail of the *object stated in the title* and germane thereto. The object expressed in the title is not the general reduction of public expenditures, but only a reduction of salaries. With the expediency of the act, we are not concerned. It may or may not have been expedient to abolish the advisory council. The method by which the abolishment is accomplished must conform to the organic law. There is nothing in the title which would justify the abolishment found in the act. Shall we emasculate a plain provision of the organic law on the plea of expediency, or because we might think it would merit public favor? In the language of Portia:

"It must not be * * *
'Twill be recorded for a precedent,
And many an error by the same example,
Will rush into the state; it cannot be."

If it be the present policy of the legislature to abolish the advisory council or any other public office or position, its regular biennial session will be held in the immediate future, when, we may presume, all acts will conform to the mandatory provisions of the organic law.

The act under consideration is invalid and violates section 30 of Article VI of the Constitution in so far as it abolishes the positions now held by relators, and the writ will issue as prayed for.

*Writ awarded.*