296 S.E.2d 892

**Myrtle O'CONNOR, et al.**

v.

**Arnold MARGOLIN,
Commissioner, etc., et al.**

**No. 15549.**

Supreme Court of Appeals of West Virginia.

May 28, 1982.

J. David, Cecil, Daniel F. Hedges, Charleston, for petitioners.

Gregory W. Bailey, Deputy Atty. Gen., Charleston, for respondents.

McHUGH, Justice:

This action is before this Court upon the petition of Myrtle O'Connor, *et al.*, for a writ of mandamus against the Commissioner of the West Virginia Department of Finance and Administration and the Director of the General Services Division of that Department (hereinafter "respondents").[1] In this action, the plaintiffs, a number of janitors employed by the State of West Virginia pursuant to *W. Va. Code,* 5A–4–1 [1969], for the maintenance of the State capitol buildings and grounds in Charleston, West Virginia, seek to retain their employment and prevent the respon-

---

1. This action is an original action in mandamus. This Court has jurisdiction in this action pursu-ant to *W. Va. Const.,* art. VIII, § 3, and *W. Va. Code,* 51–1–3 [1931].

dents from hiring private firms to do the work. This Court has before it the petition, all matters of record and the briefs and argument of counsel.

By statute, the respondent Commissioner of the Department of Finance and Administration and, in particular, the respondent Director of the General Services Division of that Department are charged with responsibility for the care, control and custody of the State capitol buildings and grounds. *W.Va.Code*, 5A-1-2 [1979]; *W.Va.Code*, 5A-4-1 [1969]. Pursuant to that responsibility, the petitioners were hired to provide janitorial services at the capitol. The petitioners worked generally from 4 p.m. to 12 midnight.

As asserted in the petition, the respondent Commissioner informed the petitioners in March, 1982, that their employment would be terminated. Approximately 82 employees were subject to that termination, and the termination was to be effective at the end of June, 1982. The petitioners' employment was terminated in order for the respondents to obtain private janitorial service for the same work. The respondents contend that State funds could be saved by the hiring of private firms to do the work, because, for example, if such firms were substituted for the petitioners, the cost of State employee benefits, such as insurance, medical and retirement benefits, could be avoided.

Filed with the respondents' answer to the petition was the May 13, 1982, affidavit of the respondent Commissioner. That affidavit stated that as a result of national and State economic difficulties the Commissioner submitted a budget proposal to the Governor of West Virginia for fiscal year 1983 which included a recommendation that, to conserve State funds, private janitorial services be substituted for the employment of the petitioners. According to the affidavit, the Governor adopted that recommendation, and subsequently the West Virginia Legislature approved a budget which eliminated funding for the petitioners' janitorial positions. The affidavit concluded by asserting that, by terminating the employment of the petitioners, a savings of State funds would result.

The petitioners were employed as janitors pursuant to *W.Va.Code*, 5A-4-1 [1969]. They are not covered by the West Virginia Civil Service System. *W.Va.Code*, 29-6-1 [1977], *et seq.*[2] *W.Va.Code*, 5A-4-1 [1969], provides, in part:

The director [General Services Division] shall be charged with the full responsibility for the care, control and custody of the capitol buildings and in this connection he shall:

(1) Furnish janitors for the capitol buildings and grounds, together with all the departments therein, or connected therewith, regardless of the budget or budgets, departmental or otherwise, from which such janitors are paid, and shall furnish janitorial supplies, light, heat and ventilation for all the rooms and corridors of the buildings. Under the direction of the president of the senate and speaker of the house of delegates, the director shall have charge of the halls and committee rooms of the two houses and any other quarters at the state capitol provided for the use of the legislature or its staff, and keep the same properly cleaned, warmed and in good order, and shall do and perform such other duties in relation thereto as either house may require.

. . . .

The offices of the assistants and employees appointed to perform these duties shall be located where designated by the governor, except that they shall not be located in any of the legislative chambers, offices, rooms or halls. Office hours shall be so arranged that emergency or telephone service shall be available

---

**2.** With respect to the West Virginia Civil Service System, it should be noted that pursuant to *W.Va.Code*, 29-6-2 [1961], "[j]anitors and laborers employed by any agency" were specifically excluded from civil service coverage. In 1977 the civil service statutes were amended, and

*W.Va.Code*, 29-6-4 [1977], provides that "[l]aborers employed by any agency" are excluded from civil service coverage. The word *janitors* was deleted from the specific exclusions from civil service coverage.

at all times. The hours of employment shall be so arranged that janitorial service shall not interfere with other employment during regular office hours.

A reading of *W. Va. Code*, 5A–4–1 [1969], and other sections within chapter 5A concerning the Department of Finance and Administration, indicates that the West Virginia Legislature intended those persons, such as the petitioners, working as janitors to be State employees. In *W. Va. Code*, 5A–4–1 [1969], janitors are referred to as employees, inasmuch as that section states that *"employees* appointed to perform these duties shall be located where designated by the governor," and "hours of *employment* shall be so arranged that janitorial service shall not interfere with *other employment* during regular office hours." (emphasis added).

The Director of the General Services Division and the personnel of that Division, such as the petitioners, are subject to the authority of the Commissioner of the Department of Finance and Administration. *W. Va. Code*, 5A–1–2a [1969], provides, in part: "The commissioner shall have control and supervision of the department of finance and administration and shall be responsible for the work of each of its *em-*

*ployees."* (emphasis added). It is clearly indicated by *W. Va. Code*, 5A–1–2a [1969], and *W. Va. Code*, 5A–4–1 [1969] that those persons hired as janitors pursuant to the authority of the Department of Finance and Administration are State employees.[3]

The respondents contend, however, that janitorial services may be acquired by way of private contracting. They support that theory by making reference to the statutory authority of the Department of Finance and Administration to enter into contracts for the purchase of commodities. *W. Va. Code*, 5A–3–3 [1980], provides, in part: "The director, under the direction and supervision of the commissioner, shall be the executive officer of the purchasing division and shall have the power and duty to: (1) Purchase or contract for, in the name of the State, the commodities and printing required by the departments of state government."[4]

The word *commodities* is defined in *W. Va. Code*, 5A–1–1 [1969]. That definition provides as follows: " 'Commodities' means supplies, material, equipment, *contractual services*, and any other articles or things used by or furnished to a department, agency or institution of the state govern-

---

**3.** The word *employee* is not defined in *W. Va. Code*, chapter 5A, concerning the Department of Finance and Administration. *See W. Va. Code*, 5A–1–1 [1969]. This Court concludes, however, that the petitioners were State employees.

Paragraph eight of the petition, which paragraph was admitted by the respondents in their answer, asserts as follows: "Benefits to which employees of the State of West Virginia are entitled include hospital and medical insurance, life insurance, retirement, sick leave and vacation days, and paid holidays." The definitions of *employee* in such areas as State retirement and insurance are therefore relevant. The definition of *employee* under the West Virginia Public Employees Retirement Act is provided by *W. Va. Code*, 5–10–2 [1971]. That section provides, in part, as follows:

(6) 'Employee' means any person who serves regularly as an officer or employee, full time, on a salary basis, whose tenure is not restricted as to temporary or provisional appointment, in the service of, and whose compensation is payable in whole or in part by any political subdivision, or an officer or employee whose compensation is calculated on a daily basis and paid monthly or on completion of assignment....

Similarly, the definition of *employee* under the West Virginia Public Employees Insurance Act is provided by *W. Va. Code*, 5–16–2 [1973]. That section provides, in part, as follows: "(2) 'Employee' means any person, including elected officers, who works regularly full time in the service of the State of West Virginia...."

There is nothing in the record to indicate that the petitioners failed to satisfy the definitions of *employee* under either the West Virginia Public Employees Retirement Act or the West Virginia Public Employees Insurance Act.

**4.** *See also W. Va. Code*, 5A–3–1 [1961], which provides as follows:

The provisions of this article for the purchase of commodities and printing shall apply to all of the departments of the state government, except as is otherwise provided by this article or by law: Provided, however, that the provisions of this article shall in no wise apply to purchase of commodities of the legislative department unless the legislature or either house thereof requests the director to render specific services under the provisions of this chapter.

ment." (emphasis added). The phrase *contractual services* found in the definition of *commodities* is also defined in *W. Va. Code,* 5A–1–1 [1969]. As that definition provides: " 'Contractual services' shall include telephone, telegraph, electric light and power, water and similar services." Those statutory definitions are essential to a determination of the authority of the Department of Finance and Administration to substitute private firms for the employment of the petitioners. *See Ohio Civil Rights Commission v. Parklawn Manor, Inc.,* 41 Ohio St.2d 47, 70 Ohio Ops.2d 148, 322 N.E.2d 642 (1975).[5] As indicated by those statutory definitions, the phrase *contractual services* and, therefore, the word *commodities* as those terms are used in chapter 5A, concerning the Department of Finance and Administration, do not include the type of services provided to the State by the petitioners.

This Court has found only two cases in which the facts were similar to the facts in the action before this Court. Those cases are *Moncrief v. Tate,* 593 S.W.2d 312 (Tex. 1980), and *California School Employees Association v. Willits Unified School District of Mendocino County,* 243 Cal. App.2d 776, 52 Cal.Rptr. 765 (1966).

In *Moncrief v. Tate,* 586 S.W.2d 562 (Tex.Civ.App.1979), officials of Tarrant County, Texas, abolished the janitorial positions of certain civil service employees and substituted a private firm to do the same work. The county officials asserted that the action was taken for economic reasons. The Court of Civil Appeals of Texas, however, reinstated the employees to their positions. Important to the decision of the Court of Civil Appeals was the fact that Tarrant County was in good financial condition and, therefore, did not need to save government funds by hiring private janitorial firms. 586 S.W.2d at 563. The decision in *Moncrief,* however, was reversed by the Supreme Court of Texas in *Moncrief v. Tate, supra.* The Texas Supreme Court in *Moncrief* rejected the theory that as long as the county was in good financial condi-

tion, the civil service positions could not be abolished. The Texas Supreme Court observed that the county would save a substantial sum by the hiring of a private janitorial firm. The court concluded that the termination of the governmental positions was justified. *See also Moncrief v. Tate,* 561 S.W.2d 941 (Tex.Civ.App.1978).

In *California School Employees Association v. Willits Unified School District of Mendocino County, supra,* two janitors were dismissed from their positions by school officials, and a private firm was hired to do the work. The school officials believed, in good faith, that the work could be done for less cost by the private firm. The two janitors were "classified employees," i.e., nonacademic personnel and not members of a merit system. 52 Cal.Rptr. at 770.

The issue in *California School Employees Association* was whether the school officials could contract for janitorial services rather than have the work done by classified employees. In support of the private contract, the school officials relied upon the following statute relating to California schools:

> Continuing contracts for work to be done, services to be performed, or for apparatus or equipment to be furnished, sold, built, leased, installed, or repaired for the district, or for materials or supplies to be furnished, sold or leased to the district may be made with an accepted vendor or lessor as follows: for work or services, or for apparatus or equipment, not to exceed five years; for materials or supplies, not to exceed three years.

The janitors in that action, however, relied upon another statute which provided as follows:

> The governing board of any school district shall employ persons for positions not requiring certification qualifications [certification related to academic personnel]. The governing board shall ... clas-

---

**5.** In *Ohio Civil Rights Commission, supra,* the court stated as follows: "The rule is well established that the General Assembly's own con-struction of its language, as provided by definitions, controls in the application of a statute." 322 N.E.2d at 644.

sify all such employees and positions. The employees and positions shall be known as the classified service. Substitute and short term employees, employed and paid for less than 75 percent of a school year, shall not be a part of the classified service....

In *California School Employees Association,* the Court held in favor of the janitors. The Court concluded that the statute relied upon by the janitors, relating to the classification of certain school employees, imposed a mandatory duty upon the school officials to retain janitors as school employees and that such duty could not be avoided by the use of private janitorial contracts.

Unlike the facts in *Moncrief, supra,* the petitioners in this action are not civil service employees. Rather, we find *California School Employees Association* to be persuasive. Although the statutes involved in *California School Employees Association* are distinguishable from those involved in this action, we find, as did the California court, a similar mandatory duty by the government to retain janitorial service through government employees, rather than through private contracting.

■ Specifically, we hold that *W.Va. Code,* 5A–4–1 [1969], which requires that the Director of the General Services Division of the Department of Finance and Administration furnish janitors for the maintenance of the State capitol buildings and grounds in Charleston, West Virginia, requires that janitors so retained be State employees, and the Commissioner of Finance and Administration and the Director of the General Services Division of that Department are without authority to terminate the employment of such employees as a class for the purpose of obtaining the same type janitorial service through private contracting.

The decision of this Court in favor of the petitioners is required by the provisions of *W.Va.Code,* 5A–4–1 [1969]. As we held in syllabus point 1 in *Jarrell v. State Workmen's Compensation Commissioner,* 152 W.Va. 418, 163 S.E.2d 798 (1968), and syllabus point 7 in *State v. Bragg,* 152 W.Va. 372, 163 S.E.2d 685 (1968): "When a stat-

ute is clear and unambiguous and the legislative intent is plain, it is the duty of the courts to apply the statute in accordance with the legislative intent therein clearly expressed."

The West Virginia Legislature has not presently amended *W.Va.Code,* 5A–4–1 [1969], or any other statute, to permit private contracting for janitorial service. Our holding is, therefore, mandated by the clear expression of the Legislature in *W.Va. Code,* 5A–4–1 [1969], that janitorial service be performed by State employees. That statute need not be construed. Nor may *W.Va.Code,* 5A–4–1 [1969], be circumvented by expanding the statutory authority of the Department of Finance and Administration to contract for commodities. *W.Va. Code,* 5A–3–3 [1980]. *W.Va.Code,* 5A–4–1 [1969], rather than *W.Va.Code,* 5A–3–3 [1980], specifically relates to the securing of janitorial service. *W.Va.Code,* 5A–3–3 [1980], relating to commodities and printing, deals with separate matters.

This decision in favor of the petitioners is further required by the principle of separation of powers. *W.Va. Const.,* art. V, § 1, provides:

> The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature.

■ Syllabus point 2 in *Appalachian Power Company v. Public Service Commission of West Virginia,* 170 W.Va. 757, 296 S.E.2d 887 (1982) appropriately sets forth the principle: "Where there is a direct and fundamental encroachment by one branch of government into the traditional powers of another branch of government, this violates the separation of powers doctrine contained in Section 1 of Article V of the West Virginia Constitution."

■ The Department of Finance and Administration is part of the executive branch of the government of this State, and; inas-

much as *W.Va.Code*, 5A–4–1 [1969], requires that janitorial service for the State capitol buildings and grounds be performed by State employees, the attempt by the Department of Finance and Administration to terminate the employment of those State janitors as a class, in favor of private contracting, constituted an invasion by the Department into the legislative branch of government. The Department of Finance and Administration is without statutory authority to substitute private firms for the janitorial service performed by the petitioners. We held in syllabus point 1 in *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622 (1981):

> Article V, section 1 of the Constitution of West Virginia which prohibits any one department of our state government from exercising the powers of the others, is not merely a suggestion; it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed.

■ Nor may the mandate of *W.Va. Code*, 5A–4–1 [1969], that the janitors hired pursuant to that statute be State employees, be precluded by the funding provisions of the State budget for fiscal year 1983. We have found authority for the principle that, in some instances, legislation may be amended by the provisions of an appropriations bill. In *United States v. Dickerson*, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940), for example, the court held that a military re-enlistment allowance, established by statute, was suspended for the fiscal year ending June 30, 1939, because of a proviso appended to an appropriations bill which stated that the allowance would not be paid. The *Dickerson* case was cited in *National Labor Relations Board v. Thompson Products, Inc.*, 141 F.2d 794 (9th Cir.1944), in which case a rider to an appropriations bill limited the funding of the National Labor Relations Board with respect to the processing of certain labor-management disputes. The court held that the rider did not constitute a substantive amendment to the National Labor Relations Act. 141 F.2d at 799. As the court stated: "Although a substantive amendment to a basic act may be incorporated in

an appropriation act from year to year [citing *Dickerson, supra*] unless a contrary purpose is clearly evident the limited period to which the provision applies suggests that no substantive change was intended." 141 F.2d at 799.

Ordinarily, general legislation in appropriations acts renders such legislation void. *See* n. 6 *infra*. The respondents argue that the budget approved by the Legislature amended *W.Va.Code*, 5A–4–1 [1969], to eliminate the position of janitor as public employment and substitute for that position janitorial service through private contracting. Although we commend the respondents for their desire to conserve State funds, it would be inappropriate for amendatory legislation of that magnitude to be promulgated by way of the budget process. *W.Va. Const.*, art. VI, § 51, concerning the budget process does not provide for the amendment of substantive legislation. Rather, statutory amendments must conform to the provisions of *W.Va. Const.*, art. VI, § 30, which states as follows:

> No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act. And no act of the legislature, except such as may be passed at the first session under this Constitution, shall take effect until the expiration of ninety days after its passage, unless the legislature shall by a vote of two thirds of the members elected to each house, taken by yeas and nays, otherwise direct.

*W.Va. Const.*, art. VI, § 30, was cited in *Moats v. Cook*, 113 W.Va. 151, 167 S.E. 137 (1932), in which action this Court held that the office of advisory member of the State board of education was not abolished, where the language of the legislative act in question abolishing that office was not indicated in the title to the act. The following language of Judge Lively in *Moats* consti-

tutes an adequate reply to the assertion of the respondents in this action that the manner of termination of the employment of the State janitors was justified for economic reasons.

The attorney general argues that the act was intended for the economic purpose of reducing governmental expenses, and the abolishment of offices would constitute such reduction by eliminating salaries; and therefore the subject matter of abolishing offices is but a detail of the *object stated in the title* and germane thereto. The object expressed in the title is not the general reduction of public expenditures, but only a reduction of salaries. With the expediency of the act, we are not concerned. It may or may not have been expedient to abolish the advisory council. The method by which the abolishment is accomplished must conform to the organic law. There is nothing in the title which would justify the abolishment found in the act.

113 W.Va. at 155, 167 S.E. 137.

█ Although *W.Va. Const.,* art. VI, § 30, does not apply to State budget bills, *State ex rel. Brotherton v. Blankenship,* 158 W.Va. 390, 214 S.E.2d 467, 477 (1975), an amendment to *W.Va.Code,* 5A–4–1 [1969], to terminate the positions of the State janitors as a class and substitute for those positions janitorial service through private contracting, by a budget bill, would constitute a major change in substantive law and, as such, would be subject to that constitutional provision. Inasmuch as *W.Va. Const.,* art. VI, § 30, was not followed in this action, the Legislature did not provide for the termination of the employment of the petitioners. Specifically, we hold that *W.Va.Code,* 5A–4–1 [1969], which requires that the janitors employed pursu-

ant to that statute be State employees, was not amended by way of the funding provisions in the State budget for fiscal year 1983, to provide that such janitorial services may be secured to the State by private contracting.[6]

The statutes concerning the authority of the Department of Finance and Administration are very clear, and as those statutes indicate, the authority of that Department to enter into private contracts is limited by statute to specific matters not relevant to this action. The Department of Finance and Administration has no broad power to substitute private employees for state employees.

Upon all of the above, a writ of mandamus is hereby granted in favor of the petitioners, and the respondents are directed, pursuant to *W.Va.Code,* 5A–4–1 [1969], to retain State employees to perform janitorial services for the State capitol buildings and grounds.

Writ granted.

---

6. As stated in 45 Op. Att'y Gen. 543 (1953) at 546:

We thus deem that, for two reasons, inclusion of general legislation in appropriations acts renders such legislation void in West Virginia.

First: The Budget Amendment lists those items to be included in the budget, none of which is an item of general legislation, and impliedly restricts inclusions to those items listed.

Second: An inclusion of general legislation in an appropriations act calls into full force the provisions of Article VI, Section 30 of the West Virginia Constitution, such provisions rendering items of general legislation in the act, not embraced in the title, nor subject to being so embraced, and constituting a second object of the act, void and of no effect.