423 S.E.2d 867

**BEL–O–MAR INTERSTATE PLANNING COMMISSION and Northern Panhandle Area Agency on Aging; Central West Virginia Area Agency on Aging; Mid–Ohio Valley Regional Council and Region V Area Agency on Aging; Region VI Planning and Development Council and Region VI Area on Aging; and Southeastern West Virginia Area on Aging, Plaintiffs Below, Appellees,**

v.

**WEST VIRGINIA COMMISSION ON AGING, a Public Corporation Established by Statute, Defendant Below, Appellant.**

**No. 21219.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 1992.

Decided Oct. 23, 1992.

Dissenting Opinion of Justice Miller Dec. 10, 1992.

Mario Palumbo, Paul E. Jordan, Monica A. Parrill, Charleston, for appellant.

G. Charles Hughes, Moundsville, for appellees.

PER CURIAM:

This appeal by the West Virginia Commission on Aging ("WVCOA"), a public corporation established by statute, is from the final order of the Circuit Court of Marshall County entered January 16, 1992. The final order of the trial court reversed the August 23, 1991 decision of an administrative hearing examiner that upheld the WVCOA's decision to reduce the number of state area agencies on aging from nine to four. Upon review of the record, we conclude that the trial court erred in reversing the decision of the hearing examiner.

The WVCOA was created by statute in 1964 to act as an advocate for and coordinator of programs and services designed to aid the older people of West Virginia. *W.Va.Code*, 29-14-1, *et seq.* The statute grants responsibility to the WVCOA to act on behalf of the state when federal programs relating to older people necessitate state action:

> The [WVCOA] shall constitute the designated state agency for handling all programs of the federal government relating to the aging requiring action within the state, which are not the specific responsibility of another state agency under the provisions of federal law or which have not been specifically entrusted to another state agency by the legislature.

*W.Va.Code*, 29-14-10 [1964].

The federal government provides appropriations to the states to benefit older people through the Older Americans Act. *See* 42 *U.S.C.* § 3001, *et seq.* The Older Americans Act outlines various "programs of grants" made available to the states for the benefit of older persons. The Act outlines various actions a state must take in order to participate in the "programs of

grants." The Act *does not mandate* participation by the states.

To be eligible to participate in the "programs of grants" made available under the Older Americans Act, a state agency on aging (in West Virginia the WVCOA) must, "divide the State into district planning and service areas[.]"[1] Prior to May, 1991, the WVCOA had divided West Virginia into nine "planning and service areas." On May 24, 1991, the WVCOA passed a resolution reducing the number of "planning and service areas" from nine to four (the "reduction resolution").

It is clear from the record that the WVCOA passed the reduction resolution in response to what it perceived to be a mandate to do so by the West Virginia legislature. This perceived mandate was discerned through an examination of a statement placed in the 1991–92 West Virginia *Budget Digest.*[2] The Executive Director of the WVCOA testified that he conducted discussions with various legislators in an attempt to understand the intention of the legislature; he thereafter became convinced that the legislature intended the WVCOA to reduce the number of planning and service areas from nine to four.

Subsequent to the reduction resolution passed by the WVCOA, the five appellees, each an agency responsible for one of the nine planning and service areas to be redefined by the reduction resolution, sought an administrative hearing with the WVCOA to protest the resolution.[3]

Appellees argued at the administrative hearing that the legislative intent gleaned from the *Budget Digest* was improperly relied upon by the WVCOA because it had not been authorized by a vote of the full legislature. They also contended that the reduction resolution violated the federal Older Americans Act (specifically 45 C.F.R. 1321.35(a)(1)).

After adducing testimony, the hearing examiner determined that the WVCOA's reduction resolution was not based upon any inadequacy on the part of the appel-

---

**1.** 42 *U.S.C.* § 3025(a)(1)(E) and (2)(A) provide that a state agency must, in order to qualify for federal "programs of grants" benefitting older Americans:

(E) divide the State into distinct planning and service areas (or in the case of a State specified in subsection (b)(5)(A) of this section, designate the entire State as a single planning and service area), in accordance with guidelines issued by the Commissioner, after considering the geographical distribution of individuals aged 60 and older in the State, the incidence of the need for supportive services, nutrition services, multipurpose senior centers, and legal assistance, the distribution of older individuals who have greatest economic need (with particular attention to low-income minority individuals) residing in such areas, the distribution of older individuals who have greatest social need (with particular attention to low-income minority individuals) residing in such areas, the distribution of older Indians residing in such areas, the distribution of resources available to provide such services or centers, the boundaries of existing areas within the State which were drawn for the planning or administration of supportive services programs, the location of units of general purpose local government within the State, and any other relevant factors; and

(2) the State agency designated under clause (1) shall—

(A) except as provided in subsection (b)(5) of this section, designate for each such area after consideration of the views offered by the unit or units of general purpose local government in such area, a public or private nonprofit agency organization as the area agency on aging for such area;

**2.** *W.Va.Code,* 4–1–18 [1969] provides, *inter alia,* that the Conferees Committee on the Budget shall prepare a digest or summary of the budget passed by the whole legislature. *See Common Cause of West Virginia v. Tomblin,* 186 W.Va. 537, 413 S.E.2d 358 (1991). The 1991 *Budget Digest* contained the following statement: "It is the intent of the legislature that the appropriation for area agencies be utilized to fund four area agencies."

**3.** Apparently this hearing was offered by the WVCOA under the auspices of 76 C.S.R. 1–3.1 (effective July 31, 1986), which states:

3.1 The State Commission on Aging (COA) shall provide an opportunity for a hearing/appeal to:

3.1.1. The Governing Board of any Area Agency on Aging when the State Agency proposes to:

(a) Disapprove the area plan or plan amendment submitted by the Governing Board of the Agency as specified in 45 C.F.R. § 1321.39(b) or

(b) Withdraw the Area Agency's designation as a planning and service area as provided in 45 C.F.R. § 1321.43.

lees, but was the result of the WVCOA's understanding of legislative intent as gleaned from the *Budget Digest* and conversations with two key legislators. The hearing examiner upheld the reduction resolution of the WVCOA, stating:

> This reduction in [planning and service areas] is ... supported by 45 C.F.R. § 1321.17(d), which requires the state to identify the geographic bounds of the planning and service areas....

WVCOA properly relies on 45 C.F.R. 1321.35(a)(1) and (3) which requires the state agency to withdraw an AAA's [area agency on aging] designation when the AAA no longer meets the requirements of the Older Americans Act and its regulations as implemented by the Commission on Aging through its state plan. As Dr. Brown [the Executive Director of the WVCOA] testified, the existing AAA's geographic boundaries no longer fit the reconfigured system of four AAA's. Also 45 C.F.R. § 1321.19(a)(2) requires the Commission to amend its state plan to reflect material changes in law, organization, policy or state agency operation. The WVCOA is reducing the number of AAA's in response to legislative mandate which caused the state agency to change its policy.

Appellees appealed the decision of the hearing examiner to the Circuit Court of Marshall County. The trial court held "that the hearing examiner rested his conclusions primarily on improper evidence," and therefore found in favor of the appellees. The "improper evidence" cited by the trial court included reliance by the Hearing Examiner on the *Budget Digest* and discussions between the Executive Director of the WVCOA and key legislators to determine "legislative intent" supporting the reduction resolution. The trial court also concluded that 45 C.F.R. § 1321.17(d) "which require[s] the state to identify the geographic bounds of the planning and service areas" was improperly relied upon by the hearing examiner.

Upon appeal to this Court, the appellants contend that the trial court erred by finding that the hearing examiner's reliance upon federal regulations supporting the reduction resolution was improper. Appellants state in their brief:

> While much, if not most, of this controversy has evolved around the legitimate creation and use of the *Budget Digest* by legislators and administrators, the fact remains that redrawing of the boundaries of AAA's [Area Agency on Aging] and declining to renew grants and contracts previously awarded to the former AAA's is a legitimate use of the power and discretion of the Commission.

For the reasons that follow, we agree with the appellant's contention.

■ A close examination of the applicable law shows that the appellees lack a cause of action. The West Virginia Code does not mandate the creation of *any* "planning and service areas," and, at most, merely grants responsibility to the WVCOA as "the designated state agency for handling all programs of the federal government relating to the aging requiring action within the state[.]" *W.Va.Code,* 29–14–10 [1964].

Neither is creation of "planning and service areas" mandated by any provision of federal law. Instead, 45 C.F.R. § 1321.-17(d) seeks only to induce the creation of planning and service areas by states through promises of federal grant money to those states which do so; 45 C.F.R. § 1321.17(d) states:

> § 1321.17 Content of State plan.
>
> *To receive a grant under this part,* a State shall have an approved State plan as prescribed in section 307 of the Act. In addition to meeting the requirements of section 307, a State plan shall include:
>
> (d) Identification of the geographic boundaries of each planning and service area and of area agencies on aging designated for each planning and service area, if appropriate.

(emphasis added). Similarly, 42 U.S.C. § 3025(a)(1)(E) (see *supra* n. 1) also only encourages states to create planning and service areas "in order for a State to be eligible to participate in programs of grants" from the federal government.

Appellees argue, however, that 45 C.F.R. § 1321.35(a)(1) limits when the WVCOA may reduce the number of planning and service areas to situations where an area agency does not meet the requirements of the Older Americans Act. It is undisputed that each of the appellees met the requirements of the Older Americans Act at the time the reduction resolution was passed. Nonetheless, close scrutiny of 45 C.F.R. 1321.35(a)(1) shows that the section only mandates when a state agency *must* "withdraw [an] area agency designation." 45 C.F.R. 1321.35(a)(1) states:

§ 1321.35. Withdrawal of area agency designation.

(a) In carrying out section 305 of the [Older Americans] Act, the State agency *shall* withdraw the area agency designation whenever it, after reasonable notice and opportunity for a hearing, finds that:

(1) An area agency does not meet the requirements of this part;

(emphasis added). The usage of the words *"shall* withdraw" rather than the words *"may only* withdraw" conveys the obvious conclusion that the section *does not limit* a State agency to withdrawing an area agency designation to only those circumstances enunciated therein.

Appellees further protest that the insertion of legislative intent concerning the reduction of state planning and service areas into the *Budget Digest* was improper because it did not derive from a vote by the whole legislature. Therefore, they argue that the WVCOA's reliance on the *Budget Digest* was improper. The fact remains, however, that the WVCOA has *absolute discretion* to reduce or enlarge the number of planning and service areas.[4] There is at present no law or procedure the WVCOA *must* follow when making a reduction decision.

Regardless of the reasons used by the WVCOA to pass the reduction resolution, it is abundantly clear that no provision of state or federal law requires the WVCOA to create *any* planning and service areas

(although such creation is obviously encouraged by 45 C.F.R. 1321.17(d) and 42 U.S.C. 3025(a)(1)(E)). Therefore, the WVCOA violated no law when it resolved to reduce the number of planning and service areas from nine to four.

■ In syllabus point 3 of *Gino's Pizza of West Hamlin v. WVHRC*, 187 W.Va. 312, 418 S.E.2d 758 (1992), we stated:

'Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions of order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." ' Syl. pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

The trial court in this case held that the decision of the hearing examiner was "clearly wrong in view of the reliable, probative and substantial evidence." However, because the action taken by the WVCOA was entirely within its discretion consistent with the decision of the hearing examiner, we find that the hearing examiner was not clearly wrong in adjudging the reduction resolution valid, and it was error

---

**4.** Appellees' argument concerning the *Budget Digest* relies heavily upon our decision in *Common Cause of West Virginia v. Tomblin, supra* at n. 2. Because the WVCOA makes reduction or

enlargement decisions at its discretion, an analysis of *Common Cause of West Virginia* and any potential applicability to this case is unnecessary.

for the trial court to reverse the administrative decision.[5]

For the reasons stated herein, the January 16, 1982 decision of the Circuit Court of Marshall County is reversed.

Reversed.

MILLER, Justice, dissenting:

(Filed Dec. 10, 1992)

The majority opinion implies that this reduction in services to the elderly was a result of legislative action. This was not the case. The record demonstrates that the executive director of the West Virginia Commission on Aging (WVCOA) was pressured into reducing the number of planning and service areas by several legislators after the legislature adjourned and after the Budget Digest was compiled.

The Budget Digest was the subject of our earlier case, *Common Cause of West Virginia v. Tomblin*, 186 W.Va. 537, 413 S.E.2d 358 (1991), in which the petitioners, nonprofit organizations, urged us to stop the practice of allowing a small group of legislators to allocate budget funds to particular projects or programs, not listed in the budget bill, without the express approval of the full legislature. The evidence in *Common Cause* reflected that this was being done through the Budget Digest, authorized under W.Va. Code, 4-1-18 (1969),[1] after the legislature adjourned. Specifically, in *Common Cause* the Budget Digest had taken $11.5 million authorized in the budget bill and, after the legislature adjourned, allocated it to a variety of local pork-barrel projects.

In what can only be termed a Pyrrhic victory for the petitioners, the majority opinion in *Common Cause* recognized that "the Legislative *Budget Digest* prepared by the Conferees Committee on the Budget does not have the force and effect of law," but went on to state that the Budget Digest "is a legitimate part of the ongoing dialogue between the legislative branch and executive branch concerning the allocation of state funds[.]" Syllabus Point 2, in part, *Common Cause, supra.* In Syllabus Point 5 of *Common Cause*, the majority sanctioned the use of the Budget Digest so long as some minimal record was made during the legislative session that could justify the subsequent alterations made in the Budget Digest.[2]

In my dissent in *Common Cause*, I pointed out that by permitting the Conferees Committee to allocate funds through the Budget Digest after the legislature had adjourned, the majority had effectively usurped the legislative power, which under Article VI, Section 1 of our Constitution, is "vested in a senate and a house of delegates." The majority's holding in *Common Cause* was not only contrary to the Constitution, but it was also against the teachings of our prior cases,[3] particularly *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622 (1981), wherein we struck down legislation that attempted to give a twelve-member legislative committee the entire authority to approve administrative rules and regulations. Our

---

5. The hearing examiner's rationale in finding for the appellants was unnecessary and we need not address the merits of that rationale in this decision. Simply put, the WVCOA did not violate any law or procedure, and the appellees have no cause of action in this case.

1. W.Va.Code, 4-1-18 (1969), states, in pertinent part: "[U]pon the passage of the budget bill ... a digest or summary of the budget bill ... as finally enacted by the Legislature ... shall be prepared at the direction of and approved by members of the conferees committee on the budget[.]"

2. Syllabus Point 5 of *Common Cause* states:

"In order for the *Budget Digest* to conform to the requirement of *W.Va.Code*, 4-1-18

[1969], which directs the Conferees Committee on the Budget to prepare a 'digest or summary' of the budget, the finance committees, their chairmen, or the subcommittee chairman must have memoranda of the negotiations, compromises and agreements or audio recordings of committee or subcommittee meetings where votes were taken or discussions had that substantiate the material which is organized and memorialized in the *Budget Digest.*"

3. *See, e.g., Benedict v. Polan*, 186 W.Va. 452, 413 S.E.2d 107 (1991); *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1988); *Jones v. Rockefeller*, 172 W.Va. 30, 303 S.E.2d 668 (1983); *O'Connor v. Margolin*, 170 W.Va. 762, 296 S.E.2d 892 (1982).

reasoning in *Barker* was later approved by the United States Supreme Court in *Immigration & Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

It is against this backdrop that today's appeal rests. The issue in this case is the validity of WVCOA's decision to reduce the number of area agencies on aging from nine to four. The majority's approach focuses on the federal regulation, 45 C.F.R. § 1321.17, which requires a state plan for implementing the Older Americans Act (state plan) to create planning and service areas if they desire to obtain federal funds.[4] 188 W.Va. at 261–62, 423 S.E.2d at 870–71. The majority then reasons that because the federal program for the elderly is not mandatory upon the states, WVCOA can change or abolish such planning and service areas.

However, a review of other applicable federal regulations points to an opposite conclusion where, as here, the state has already applied for and accepted federal funds. First, it is quite clear that while WVCOA is given primary responsibility under 45 C.F.R. § 1321.7(a) for implementing the state plan,[5] it is required to designate area agencies to perform much of the actual work under 45 C.F.R. § 1321.7(b).[6] These are the agencies which are affected in this case.

Once a state elects to participate in the federal funding for older Americans, as this state has done, there are substantial procedural requirements that must be met. 45 C.F.R. § 1321.17, details the necessary information[7] that must be submitted by a state to the applicable federal agency for approval. *See* 45 C.F.R. § 1321.21.[8]

More importantly, 45 C.F.R. § 1321.35(a) outlines when the state agency can withdraw an area agency which has been approved under the state plan. Under this subsection, there are only four criteria that justify a withdrawal: (1) the area agency does not meet plan requirements; (2) the area plan or its amendment is not approved; (3) the area agency fails to comply with its area plan or with the Older Americans Act or state agency policies; or (4) the agency's activities are inconsistent with its statutory function.[9]

---

**4.** The relevant portion of 45 C.F.R. § 1321.17 is: "To receive a grant under this part, a State shall have an approved State plan as prescribed in section 307 of the Act. In addition to meeting the requirements of section 307, a State plan shall include: * * * (d) Identification of the geographic boundaries of each planning and service area and of area agencies on aging designated for each planning and service area, if appropriate."

**5.** 45 C.F.R. § 1321.7(a), in relevant part, states: "The Older Americans Act intends that the State agency on aging shall be the leader relative to all aging issues on behalf of older persons in the State."

**6.** 45 C.F.R. § 1321.7(b) states: "The State agency shall designate area agencies on aging for the purpose of carrying out the mission described above for the State agency at the sub-State level. The State agency shall designate as its area agencies on aging only those sub-state agencies having the capacity and making the commitment to fully carry out the mission described for area agencies in § 1321.53 below."

**7.** 45 C.F.R. § 1321.17 contains some twenty-one subparts covering what a state plan must contain.

**8.** 45 C.F.R. § 1321.21 states:

"Each State plan, or plan amendment which requires approval of the Commissioner, shall be signed by the Governor or the Governor's designee and submitted to the Commissioner to be considered for approval at least 45 calendar days before the proposed effective date of the plan or plan amendment."

**9.** 45 C.F.R. § 1321.35(a) states:

"In carrying out section 305 of the Act, the State agency shall withdraw the area agency designation whenever it, after reasonable notice and opportunity for a hearing, finds that:

"(1) An area agency does not meet the requirements of this part;

"(2) An area plan or plan amendment is not approved;

"(3) There is substantial failure in the provisions or administration of an approved area plan to comply with any provision of the Act or of this part or policies and procedures established and published by the State agency on aging; or

"(4) Activities of the area agency are inconsistent with the statutory mission prescribed in the Act or in conflict with the requirement of the Act that it function only as an area agency on aging."

There is nothing in the record to show that any of the involved area agencies violated any of these provisions. In fact, the director of WVCOA admitted this and indicated that the decision to reduce the area agencies was solely a result of the suggestion in the Budget Digest and his conversation with several members of the Conferees Committee who prepared the Digest.

Even the majority acknowledges that "each of the appellees [the area agencies] met the requirements of the Older Americans Act." 188 W.Va. at 262, 423 S.E.2d at 871. The majority sanctions the reduction in the number of area agencies by saying that "[t]he usage of the words '*shall* withdraw' rather than the words '*may only* withdraw' conveys the obvious conclusion that the section *does not limit* a State agency to withdrawing an area agency designation to only those circumstances enunciated therein." 188 W.Va. at 262, 423 S.E.2d at 871. (Emphasis in original).

This conclusion flies in the face of our statutory construction rule that ordinarily the word 'shall' is a mandatory command. Syllabus Point 1, *Nelson v. West Virginia Public Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982). In this situation, the specific enumeration of four grounds for terminating an area agency would foreclose the right to a general termination.

The majority states that the "WVCOA has *absolute discretion* to reduce or enlarge the number of planning and service areas. There is at present no law or procedure the WVCOA *must* follow when mak-

ing a reduction decision." 188 W.Va. at 262, 423 S.E.2d at 871. (Emphasis in original; footnote omitted). This statement ignores the plain language of 45 C.F.R. § 1321.19, which relates to amendments to the state plan. Under subsection (a)(2), the state plan is required to be amended where there is a material change "in any law, organization, policy, or State agency operation[.]" There is a further requirement of reporting changes to the applicable federal agency under 45 C.F.R. § 1321.19(c).[10]

Thus, it seems clear that once a state elects to accept federal funds for the elderly, it may not later abolish area agencies absent one of the causes contained in 45 C.F.R. § 1321.35.[11] None of these criteria were met. The state may also have the right to alter or amend provisions of the state plan relating to the establishment of area agencies subject to the provisions of 45 C.F.R. § 1321.19 requiring federal approval. The record shows that this was not done.

Once again, the majority has allowed a small group of legislators to revise the budget and dictate policy to a state agency.[12] I find this action to be contrary to our Constitution and to the principles of a democratic society. I, therefore, dissent.

---

**10.** 45 C.F.R. § 1321.19 states:

"(a) A State shall amend the State plan whenever necessary to reflect:

"(1) New or revised Federal statutes or regulations;

"(2) A material change in any law, organization, policy or State agency operation, or

"(3) Information required annually by sections 307(a)(23) and (29) of the Act.

"(b) Information required by paragraph (a)(3) of this section shall be submitted according to guidelines prescribed by the Commissioner.

"(c) If a State intends to amend provisions of its plan required under §§ 1321.17(a) or (f), it shall submit its proposed amendment to the Commissioner for approval. If the State

changes any of the provisions of its plan required under § 1321.17(b) through (d), it shall amend the plan and notify the Commissioner. A State need only submit the amended portions of the plan."

**11.** *See* note 9, *supra*.

**12.** The final irony is that the executive director of the WVCOA acknowledged in his testimony before the trial court that an attempt had been made during the legislative session to consolidate the area agency districts. This consolidation effort failed in the House of Delegates. Yet, the desired result was accomplished through the Budget Digest!